**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| WAEL MUHAMMAD BAZZI,<br><br>        Plaintiff,<br><br>     v.<br><br>ANDREA M. GACKI, in her official capacity as Director of the U.S. Department of the Treasury, Office of Foreign Assets Control, and UNITED STATES DEPARTMENT OF THE TREASURY, OFFICE OF FOREIGN ASSETS CONTROL,<br><br>        Defendants. | Civil Action No. 19-cv-01940 (TNM) |

## STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................1

BACKGROUND .......................................................................................................................2

I.     Statutory and Regulatory Background ...............................................................................2

     A.     Historical Overview ...............................................................................................2

     B.     International Emergency Economic Powers Act ("IEEPA")...................................2

     C.     Executive Order 13224 ..........................................................................................4

II.     Factual Background .........................................................................................................5

     A.     Bazzi's Designation Under EO 13224 ....................................................................5

          i.     Press Release .............................................................................................6

          ii.     Federal Register Notice..............................................................................7

     B.     Bazzi's Lawsuit and Additional Notice .................................................................7

          i.     Evidentiary Memorandum ..........................................................................8

          ii.     Amended Complaint ...................................................................................8

STANDARD OF REVIEW .........................................................................................................9

ARGUMENT .........................................................................................................................10

I.     Bazzi's Constitutional Claim Fails...................................................................................10

     A.     Bazzi's Due Process Claim Should Be Dismissed Under Rule 12 Because He Has No Alleged Connection to the United States. ............................................10

     B.     OFAC Provided Bazzi Extensive Notice of How he Acted For or On Behalf of Mohammad Bazzi. .............................................................................................12

II.     OFAC Provided Bazzi With Sufficient Notice Under the APA. .........................................16

III.     Ample Evidence Supports OFAC's Decision to Designate Bazzi as a SDGT. ..................18

CONCLUSION .......................................................................................................................18

## TABLE OF AUTHORITIES

**CASES**

*32 Cty. Sovereignty Comm. v. U.S. Dep't of State*,
   292 F.3d 797 (D.C. Cir. 2002) ....................................................................11, 12

*Al Haramain Islamic Found., Inc. v. U.S. Dep't of Treasury*,
   686 F.3d 965 (9th Cir. 2012).............................................................................18

*Camp v. Pitts*,
   411 U.S. 138 (1973) ...........................................................................................17

*Dames & Moore v. Regan*,
   453 U.S. 654 (1981) .............................................................................................2

*Fares v. Smith*,
   249 F. Supp. 3d 115 (D.D.C. 2017), *aff'd*, 901 F.3d 315 (D.C. Cir. 2018) .........15, 17

*Fares v. Smith*,
   901 F.3d 315 (D.C. Cir. 2018) .................................................................14, 15, 16

*FBME Bank Ltd. v. Lew*,
   209 F. Supp. 3d 299 (D.D.C. 2016) ....................................................................17

*Gilbert v. Homar*,
   520 U.S. 924 (1997) ...........................................................................................12

*Holy Land Found. for Relief & Dev. v. Ashcroft*,
   333 F.3d 156 (D.C. Cir. 2003) .....................................................................13, 16

*Jifry v. FAA*,
   370 F.3d 1174 (D.C. Cir. 2004) ...............................................................11, 12, 16

*Johnson v. Eisentrager*,
   339 U.S. 763 (1950)............................................................................................11

*Joumaa v. Mnuchin*,
   Civ. A. No. 17-2780 (TJK),  2019 WL 1559453 (D.D.C. Apr. 10, 2019),
   *appeal filed*, No. 19-5166 (D.C. Cir. June 10, 2019).........................................12, 15

*Kadi v. Geithner*,
   42 F. Supp. 3d 1 (D.D.C. 2012) ...................................................................11, 16

*Mathews v. Eldridge*,
   424 U.S. 319 (1976)............................................................................................12

*Morrissey v. Brewer*,
   408 U.S. 471 (1972)............................................................................................12

*N. Air Cargo v. U.S. Postal Serv.*,
  674 F.3d 852 (D.C. Cir. 2012) ................................................................................18

*Nat'l Council & Resistance of Iran v. U.S. Dep't of State*,
  251 F.3d 192 (D.C. Cir. 2001) .........................................................................11, 16

*Orvis v. Brownell*,
  345 U.S. 183 (1953) ..................................................................................................2

*\*People's Mojahedin Org. of Iran v. U.S. Dep't of State*,
  182 F.3d 17 (D.C. Cir. 1999) ..................................................................................11

*Propper v. Clark*,
  337 U.S. 472 (1949) ..................................................................................................2

*Regan v. Wald*,
  468 U.S. 222 (1984) ...............................................................................................2, 3

*Sulemane v. Mnuchin*,
  Civ. A. No. 16-1822 (TJK), 2019 WL 77428 (D.D.C. Jan. 2, 2019).........................17

*United States v. Verdugo-Urquidez*,
  494 U.S. 259 (1990) .........................................................................................11, 12

*\*Zevallos v. Obama*,
  10 F. Supp. 3d 111 (D.D.C. 2014), *aff'd*, 793 F.3d 106 (D.C. Cir. 2015) ............10, 13

*\*Zevallos v. Obama*,
  793 F.3d 106 (D.C. Cir. 2015) ......................................................................10, 13, 15

**STATUTES**

5 U.S.C. § 706 ...............................................................................................................17, 18

8 U.S.C. § 1189 .....................................................................................................................6

50 U.S.C. § 1701 .............................................................................................................2, 3

*\*50 U.S.C. § 1702 ......................................................................................................3, 4, 8, 16

50 U.S.C. § 4305 ...................................................................................................................2

Pub. L. No. 107-56, 115 Stat. 272 (2001) ............................................................................4

**RULES**

Fed. R. Civ. P. 56 ................................................................................................................10

**REGULATIONS**

31 C.F.R. Part 501 ......................................................................................................5

31 C.F.R. Part 594 ......................................................................................................5

31 C.F.R. § 501.807 ...........................................................................................5, 14, 15

31 C.F.R. § 594.801 ....................................................................................................5

31 C.F.R. § 594.802 ....................................................................................................5

## OTHER AUTHORITIES

40 Stat. 411 (1917) (codified as amended at 50 U.S.C. §§ 4301 *et seq*) ...........................2

Blocking Assets & Prohibiting Transactions with Significant Narcotics Traffickers,
    Exec. Order No. 12978, 60 Fed. Reg. 54579 (Oct. 21, 1995).......................................3

*Blocking Property & Prohibiting Transactions with Persons Who Commit, Threaten to
    Commit, or Support Terrorism,
    Exec. Order No. 13224, 66 Fed. Reg. 49079 (Sept. 23, 2001) ........................... *passim*

Blocking Property of Additional Persons Contributing to the Situation in Ukraine,
    Exec. Order No. 13661, 79 Fed. Reg. 15535 (Mar. 19, 2014).......................................3

Modernizing Sanctions To Combat Terrorism,
    Exec. Order No. 13886, 84 Fed. Reg. 48041 (Sept., 9, 2019) ......................................4

S. Rep. No. 95-466 (1977),
    *reprinted in* 1977 U.S.C.C.A.N. 4540, *codified at* 50 U.S.C. §§ 1701-1706 ..............................2

National Counterterrorism Center, Counter Terrorism Guide,
    https://www.dni.gov/nctc/groups/hizballah.html..........................................................5

*U.S. Dep't of the Treasury, Press Release,
    https://home.treasury.gov/news/press-releases/sm0388 ............................................13

**INTRODUCTION**

The U.S. Department of the Treasury Office of Foreign Assets Control ("OFAC") designated Plaintiff Wael Muhammad Bazzi's father, Mohammad Ibrahim Bazzi, as a Specially Designated Global Terrorist ("SDGT") pursuant to Executive Order 13224 ("EO 13224"), after concluding that Mohammad Bazzi is a key Hizballah financier who provided millions of dollars to the terrorist organization over the course of many years. That designation added Mohammad Bazzi to the list of Specially Designated Nationals and Blocked Persons ("SDN List") and blocked his property and interests in property that are subject to United States jurisdiction, and generally prohibited U.S. persons from engaging in transactions with him. But "Hizballah and its proxies continue to use deceptive practices to circumvent sanctions, such as the use of family members and others to gain access to the formal financial system." Administrative Record ("A.R.") at 3. And in April 2019, OFAC targeted such attempted circumvention, designating Wael Bazzi a SDGT pursuant to EO 13224 for acting for or on behalf of his father and placing him on the SDN List.

Wael Bazzi sued, arguing that he did not receive adequate post-deprivation notice under the Due Process Clause and the Administrative Procedure Act ("APA"). But Bazzi's own allegations reveal that he is a foreign national with *no* connection with the United States, let alone one sufficient to entitle him to constitutional protections. And OFAC provided him with the administrative record, redacted as appropriate to shield classified and otherwise privileged or protected information, and Bazzi fails to identify an entitlement to anything further under the APA. Both of Bazzi's claims fail for these threshold reasons.

In any event, OFAC provided Bazzi ample notice. On the day of his designation, the agency notified him via press release that he was designated pursuant to EO 13224 "for acting for or on behalf of his father and Hizballah financier, Mohammad Bazzi." A.R. 2. And OFAC provided numerous details supporting that conclusion, including identifying specific companies or

1

transactions that the two utilized for their illicit collaboration, as well as a location and timeframe for some of that collaboration. Moreover, OFAC subsequently announced the basis for Bazzi's designation in the Federal Register and provided Bazzi with the administrative record underlying his designation. OFAC's multiple disclosures plainly provided Bazzi an opportunity to understand and respond to facts underlying his designation, and his assertion to the contrary is baseless.

For these reasons, as discussed more fully below, the Court should enter judgment for Defendants.

## BACKGROUND

### I.      Statutory and Regulatory Background

#### A.      Historical Overview

For nearly its entire history, the U.S. has utilized economic sanctions as a tool in its foreign policy and national security arsenals. During most of the twentieth century, U.S. sanctions programs were governed by the Trading With the Enemy Act ("TWEA"), enacted in 1917. *See* 40 Stat. 411 (codified as amended at 50 U.S.C. § 4301 *et seq*.). As amended in 1933, TWEA granted the President "broad authority" to "investigate, regulate . . . prevent or prohibit . . . transactions" in times of war or declared national emergencies. *See* 50 U.S.C. § 4305(b)(1); *Dames & Moore v. Regan*, 453 U.S. 654, 672 (1981). TWEA conveys to the Executive Branch the authority to regulate, prevent, or prohibit transactions, which has been consistently interpreted to encompass the power to block or freeze a person's property. *See, e.g.*, *Orvis v. Brownell*, 345 U.S. 183, 187-88 (1953); *Propper v. Clark*, 337 U.S. 472, 483-84 (1949).

#### B.      International Emergency Economic Powers Act ("IEEPA")

In 1977, Congress amended TWEA and enacted IEEPA. *See* S. Rep. No. 95-466, at 2 (1977), *reprinted in* 1977 U.S.C.C.A.N. 4540, 4541, *codified at* 50 U.S.C. §§ 1701-1706. IEEPA extended the President's authority to declare national emergencies, while TWEA's application was

limited to periods of declared wars.  *See Regan v. Wald*, 468 U.S. 222, 227-28 (1984).  Although the broad authorities granted to the President under IEEPA remain essentially the same as those under TWEA, with certain limited exceptions, *see id.* at 228, IEEPA requires the President to declare a national emergency "to deal with any unusual and extraordinary threat, which has its source in whole or substantial part outside the United States, to the national security, foreign policy, or economy of the United States," *see* 50 U.S.C. § 1701(a).  Once such a national emergency is declared, IEEPA authorizes the President to:

> . . . direct and compel, nullify, void, prevent or prohibit, any . . . transfer . . . of, or dealing in, or exercising any right, power, or privilege with respect to, or transactions involving, any property in which any foreign country or a national thereof has any interest . . . with respect to any property, subject to the jurisdiction of the United States . . . .

*Id.* § 1702(a)(1)(B).

Pursuant to this expansive authority, Presidents have designated persons under sanctions programs based on IEEPA in response to a variety of declared national emergencies.  *See, e.g.*, Blocking Property of Additional Persons Contributing to the Situation in Ukraine, EO 13661, 79 Fed. Reg. 15535 (Mar. 19, 2014) (blocking assets of persons determined "to be owned or controlled by, or to have acted or purported to act for or on behalf of, directly or indirectly . . . a senior official of the Government of the Russian Federation" after finding that government's actions and policies with respect to Ukraine "constitute an unusual and extraordinary threat to the national security and foreign policy of the United States"); Blocking Assets & Prohibiting Transactions with Significant Narcotics Traffickers, EO 12978, 60 Fed. Reg. 54579 (Oct. 21, 1995) (blocking assets of persons who "play a significant role in international narcotics trafficking centered in Colombia").

In October 2001, the United and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001 amended IEEPA.  Among other things, the amendments provided that, in case of judicial review of an IEEPA-based blocking designation,

an agency record containing classified information "may be submitted to the reviewing court ex parte and in camera." *See* 50 U.S.C. § 1702(c), added by Pub. L. No. 107-56, § 106, 115 Stat. 272, 278 (2001).

### C.     Executive Order 13224

In the wake of the September 11, 2001 terrorist attacks, the President issued Executive Order 13224, "find[ing] that grave acts of terrorism and threats of terrorism committed by foreign terrorists," and "the continuing and immediate threat of further attacks on United States nationals or the United States constitute an unusual and extraordinary threat to the national security, foreign policy, and economy of the United States."  Blocking Property & Prohibiting Transactions with Persons Who Commit, Threaten to Commit, or Support Terrorism, EO 13224, 66 Fed. Reg. 49079 (Sept. 23, 2001).  The President therefore "decalare[d] a national emergency to deal with that threat" and delegated to the Secretary of the Treasury the authority to, in consultation with the Secretary of State and Attorney General, block all property and interest in property of persons who, as relevant here, were determined "to assist in, sponsor, or provide financial, material, or technological support for, or financial or other services to or in support of, such acts of terrorisms or those persons listed in the Annex to [EO 13224] or determined to be subject to th[at] order," *id.* § 1(d)(i), as well as those who "act for on behalf of" such designated individuals, *id.* § 1(c).[1]

EO 13224 authorizes the Secretary of the Treasury, in consultation with the Secretary of State and the Attorney General, "to take such actions, including the promulgation of rules and regulations, and to employ all powers granted to the President by IEEPA . . . as may be necessary to carry out the purposes of this order," and to re-delegate such functions as appropriate.  *Id.* § 7. Pursuant to a delegation of authority by the Secretary of the Treasury, *see* 31 C.F.R. § 594.802,

---

[1] Although not at issue here, on September 9, 2019, the President signed Executive Order 13886, "Modernizing Sanctions To Combat Terrorism," which amended Executive Order 13224.

OFAC has promulgated regulations to implement EO 13224.  *See generally* 31 C.F.R. Pt. 594 ("Global Terrorism Sanctions Regulations").

An individual or entity designated by OFAC pursuant to EO 13224 is referred to as a "Specially Designated Global Terrorist" ("SDGT"), and the individual or entity is included on the list of Specially Designated Nationals and Blocked Persons ("SDN List") maintained by OFAC. Once designated, a SDGT may "seek administrative reconsideration" of the designation, or may "assert that the circumstances resulting in the designation no longer apply."  31 C.F.R. § 501.807; *see id.* § 594.801 (referencing 31 C.FR. part 501, subpart E).  In doing so, the SDGT "may submit arguments or evidence that the person believes establishes that insufficient basis exists for the designation," and may also "propose remedial steps on the person's part . . . which the person believes would negate the basis for designation."  *Id.* § 501.807(a).  Additionally, the SDGT may request a meeting with OFAC.  *Id.* § 501.807(c).  After conducting a review of a request for reconsideration, OFAC will "provide a written decision" to the SDGT.  *Id.* § 501.807(d).  OFAC's regulations do not limit the number of times a SDGT may seek to challenge its designation administratively.  *See generally id.* § 501.807.

## II.      Factual Background

### A.       Bazzi's Designation Under EO 13224

"Hizballah has been involved in numerous anti-US terrorist attacks, including the suicide truck bombings of the US Embassy in Beirut in April 1983, the US Marine barracks in Beirut in October 1983, and the US Embassy annex in Beirut in September 1984, as well as the hijacking of TWA 847 in 1985 and the Khobar Towers attack in Saudi Arabia in 1996."   National Counterterrorism Center, Counter Terrorism Guide.[2]   The Secretary of State has designated

---

[2] https://www.dni.gov/nctc/groups/hizballah.html (last visited November 4, 2019).

Hizballah a Foreign Terrorist Organization under section 219 of the Immigration and Nationality Act, 8 U.S.C. § 1189.  A.R. 20, 52.  Further, in consultation with the Secretary of the Treasury and the Attorney General, the Secretary of State designated Hizballah pursuant to EO 13224 for committing, or posing a significant risk of committing, acts of terrorism that threaten the security of U.S. nationals or the national security, foreign policy, or economy of the United States.  A.R. 20, 49-50.

On May 17, 2018, OFAC designated Bazzi's father, Mohammad Ibrahim Bazzi, pursuant to section 1(d)(i) of EO 13224 for "assisting in, sponsoring, or providing financial, material, or technological support for, or financial or other services to or in support of Hizballah."  *Id.* at 18 n.2 (capitalization and asterisk removed).[3]  Bazzi's father is a "major Hizballah financier[]" who provided the terrorist organization "millions of dollars . . . from his business activities," and "operates or transacts in or through Belgium, Lebanon, Iraq, and several countries in West Africa." *Id.* at 4.  Simultaneously, OFAC designated five companies located in Europe, West Africa, and the Middle East for being owned or controlled by Mohammad Bazzi, including Global Trading Group NV ("GTG").  83 Fed. Reg. 23,997, 23,998 (May 23, 2018); *see also* A.R. 2.  But "[s]ince his designation in May 2018, Mohammad Bazzi has continued to work with other Treasury-designated, senior Hizballah members."  *Id.* at 5.

"Hizballah and its proxies continue to use deceptive practices," including "the use of family members . . . to gain access to the formal financial system."  *Id.* at 3.  OFAC targeted that practice on April 24, 2019, when it designated Bazzi pursuant to section 1(c) of EO 13224 "for acting for or on behalf of his father and Hizballah financier, Mohammad Bazzi."  *Id.* at 2.

     i.       Press Release

---

[3] Bazzi's father filed a similar lawsuit, *see Bazzi v. Gacki et al.*, 19-cv-484-RDM (D.D.C.), where cross-motions for summary judgment are pending a decision.

In announcing Bazzi's designation, the agency issued a press release explaining "[a]s of at least early 2018, Wael Bazzi has been witting of Mohammad Bazzi's involvement in illicit activity," and that his father had turned to him "to continue doing business in the Gambia," since his designation in May 2018.  A.R. 5.  Mohammad Bazzi "has continued to rely on" his son "to register new businesses and bid on Gambia government contracts."  *Id.*  Such reliance was nothing new— in 2017, Mohammad Bazzi "planned to submit his son . . . to fill the Lebanese Consular position in the Gambia because he could exert his influence over" him.  *Id.*

The press release goes on to detail several instances of Bazzi's illicit collaboration with his father, including by identifying specific companies that the two used.  Bazzi coordinated with his father to change the name of GTG after its designation.  *Id.*  "[L]ikely to obscure" his father's involvement and to circumvent his designation, Bazzi was the purported owner of this new company.  *Id.*  Bazzi also "likely established an account for Voltra Transcor Energy, in connection" with his father's "attempted use of an intermediary company to move money to GTG and circumvent OFAC sanctions."  *Id.* at 5-6.  The press release further details other transactions between the two, explaining that Bazzi "formed a petroleum company to maintain his father's access to the oil industry," *id.* at 5, and that he also helped his father and a Lebanon-based associate to facilitate payments for a business contract, *id.*

    ii.      Federal Register Notice

OFAC also published on May 16, 2019, a Federal Register Notice announcing Bazzi's designation as a SDGT and placement on the SDN list.  The notice explained that Bazzi was "[d]esignated pursuant to section 1(c) of E.O. 13224 for acting for or on behalf" of Mohammad Bazzi, "an individual whose property and interests in property are blocked pursuant to E.O. 13224."  *Id.* at 15.

    **B.**      **Bazzi's Lawsuit and Additional Notice**

Bazzi filed this lawsuit against Defendants OFAC and Andrea M. Gacki, in her official capacity as Director of that office (collectively, "Defendants").  Compl. ¶¶ 15-16, ECF No. 1.  His original complaint challenged the adequacy of the evidence underlying his designation as a SDGT pursuant to EO 13224 and his inclusion on OFAC's SDN List of persons whose property and interests in property are blocked.  *See id.* ¶¶ 30-35, ECF No. 1.

    i.      Evidentiary Memorandum

After answering the Complaint, OFAC released to Bazzi the administrative record underlying his designation, which includes the "evidentiary memorandum" setting forth OFAC's reasons for designating Bazzi as a SDGT, as well as supporting exhibits.  As required, OFAC withheld the classified and otherwise privileged or protected information in the memorandum and supporting exhibits.  *See* Certification of A.R. ¶ 4, ECF No. 10-1.[4]  OFAC's memorandum explains the factual and legal bases for its determination pursuant to EO 13224 that Bazzi "acts for or on behalf of Mohammad Ibrahim Bazzi, a person whose property and interests in property are blocked pursuant to E.O. 13224."  A.R. 19 (capitalization and asterisk removed).  Under that heading, the memorandum includes eight supporting paragraphs, which are redacted because they are classified.  *Id*. at 20-22.[5]

    ii.      Amended Complaint

After receiving the administrative record, Bazzi filed an Amended Complaint, dropping his challenge to the adequacy of the evidence supporting his designation, instead raising new claims

---

[4] OFAC also redacted non-responsive information elsewhere in the record about other designated entities that are not parties to this lawsuit.  *See* Certification of A.R. ¶ 4.

[5] As authorized by IEEPA, Defendants intend to lodge for the Court's review on an *ex parte*, *in camera* basis, a copy of the record containing unredacted classified information when the parties file the joint appendix required by Local Civil Rule 7(n).  *See* 50 U.S.C. § 1702(c) ("[I]f the determination was based on classified information . . . such information may be submitted to the reviewing court ex parte and in camera").

asserting only that OFAC has not provided him the sufficient notice of the basis of his designation. Am. Compl. ¶¶ 6, 24-34, ECF No. 11. Specifically, in light of the redactions of classified material in the administrative record, he asserts that the agency has not "provide[d him] with an understanding of the allegations supporting" his designation, and that this purported lack of sufficient post-deprivation notice violates his rights to due process, *id*. ¶¶ 24-28 (Count I), and the APA, *id*. ¶ 29-34 (Count II). The Amended Complaint seeks a variety of relief, including an order requiring "Defendants to adequately explain why all redacted portions of the administrative record" have not been publicly disclosed, and ordering Defendants to provide legally sufficient notice. Am. Compl. Relief Requested.

## STANDARD OF REVIEW

On a motion to dismiss under Rule 12(b)(1), the plaintiff bears the burden of establishing the court's subject-matter jurisdiction. *E.g.*, *Khadr v. United States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008). "Standing is a necessary predicate to any exercise of federal jurisdiction, and if it is lacking, then the dispute is not a proper case or controversy under Article III, and federal courts do not have subject matter jurisdiction to decide the case." *Prisology v. Fed. Bureau of Prisons*, 74 F. Supp. 3d 88, 93 (D.D.C. 2014) (citation omitted), *aff'd*, 852 F.3d 1114 (D.C. Cir. 2017).

A motion under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) tests whether a complaint "contain[s] sufficient factual matter, accepted as true, to state a claim [of standing]" or of a claim to relief "that is plausible on its face.'" *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (quotation marks and citation omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While a complaint "does not need detailed factual allegations," it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). For purposes of a Rule 12(b)(6) motion, the "complaint" also includes matters incorporated therein, *e.g.*, *Hinton v. Corr. Corp. of*

*Am.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009), and Rule 12(d) authorizes the court to treat a Rule 12(b)(6) motion as a motion for summary judgment under Rule 56 where the defendants rely on matters outside the pleadings, provided that all parties have a reasonable opportunity to present all material pertinent to the motion.  Fed. R. Civ. P. 12(d); *Conant v. Wells Fargo Bank, N.A.*, 60 F. Supp. 3d 99, 106-07 (D.D.C. 2014).

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court's role is "limited . . . in reviewing the administrative record" in an APA action, as the "the district judge sits as an appellate tribunal." *Zevallos v. Obama*, 10 F. Supp. 3d 111, 117 (D.D.C. 2014), *aff'd*, 793 F.3d 106 (D.C. Cir. 2015) (citation omitted).  "The entire case on review is a question of law," and "[s]ummary judgment . . . serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review."  *Id.* (citations omitted).

## ARGUMENT

### I.    Bazzi's Constitutional Claim Fails.

Bazzi takes issue with the manner in which OFAC notified him about its decision to designate him pursuant to EO 13224, claiming that OFAC violated his Fifth Amendment due process rights.  Am. Compl. ¶¶ 24-30.  But as a foreign person lacking presence in and substantial contacts with the United States, Bazzi cannot assert any such rights.  And in any event, the notice provided by OFAC accords with any process that Bazzi may be due.

### A. Bazzi's Due Process Claim Should Be Dismissed Under Rule 12 Because He Has No Alleged Connection to the United States.

"[N]on-resident aliens who have insufficient contacts with the United States are not entitled to Fifth Amendment protections." *Jifry v. FAA*, 370 F.3d 1174, 1182 (D.C. Cir. 2004); *accord Johnson v. Eisentrager*, 339 U.S. 763, 770-71 (1950). Some constitutional protections may apply when aliens "have come within the territory of the United States and developed substantial connections with this country." *United States v. Verdugo-Urquidez*, 494 U.S. 259, 271 (1990). Although the D.C. Circuit has not directly addressed what types of connections are substantial enough to satisfy that standard within the context of an OFAC sanctions case, the Circuit's discussion of the issue in cases involving challenges to the Secretary of State's designation of a Foreign Terrorist Organization ("FTO") is instructive. *Cf. Kadi v. Geithner*, 42 F. Supp. 3d 1, 25-26 (D.D.C. 2012) (discussing D.C. Circuit precedent involving challenges to FTO designations). In *National Council of Resistance of Iran v. Department of State*, the D.C. Circuit concluded that two Iranian organizations could bring a due process challenge because, after reviewing the entire record including classified information, the Court found that they could "rightly lay claim to having come within the territory of the United States and developed substantial connections with this country," namely an "overt presence within the National Press Building in Washington, D.C." and a "claim[] [of] an interest in a small bank account." 251 F.3d 192, 201-02 (D.C. Cir. 2001). By contrast, in *32 County Sovereignty Committee v. Department of State*, the D.C. Circuit rejected the petitioners' claim to constitutional rights where they "demonstrated neither a property interest nor a presence in this country." 292 F.3d 797, 799 (D.C. Cir. 2002); *see also People's Mojahedin Org. of Iran v. Dep't of State,* 182 F.3d 17, 22 (D.C. Cir. 1999) ("A foreign entity without property or presence in this country has no constitutional rights, under the due process clause or otherwise.").

Here, Bazzi's allegations in his Amended Complaint fail to provide him any basis to seek relief based on the Constitution. He acknowledges that he is a citizen and resident of Belgium, with no apparent physical presence in the United States. *See* Am. Compl. ¶ 10. And he does not allege

that he has any property in the United States.  *See generally* Am. Compl.  Thus the allegations Bazzi has set forth are inadequate to demonstrate that he is entitled to Fifth Amendment protections, *see Verdugo-Urquidez*, 494 U.S. at 270-71, particularly in the context of a summary judgment motion, *see Conant*, 60 F. Supp. 3d at 107 ("Conclusory assertions offered without any factual basis in the record cannot create a genuine dispute sufficient to survive summary judgment.") (citing *Ass'n of Flight Attendants-CWA v. U.S. Dep't of Transp.*, 564 F.3d 462, 465-66 (D.C. Cir. 2009))).  In short, Bazzi has not demonstrated that he can assert any rights under the Constitution, nor has he stated a claim upon which relief may be granted.  Defendants "did not have to provide [Bazzi] with any particular process," *32 Cty. Sovereignty Comm.*, 292 F.3d at 799, and his constitutional claim should be dismissed.[6]

### B. OFAC Provided Bazzi Extensive Notice of How he Acted For or On Behalf of Mohammad Bazzi.

Even if Bazzi could assert a Fifth Amendment claim—and he cannot—the Court should nevertheless hold that OFAC's well-established administrative procedures satisfy due process. "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Gilbert v. Homar*, 520 U.S. 924, 930 (1997) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). "The essence of due process is the requirement that a person in jeopardy of serious loss (be given) notice of the case against him and opportunity to meet it." *Mathews v. Eldridge*, 424

---

[6] Another court in this district recently concluded, in dicta, that "the question of whether a foreign plaintiff may bring a Fifth Amendment due process claim is not a jurisdictional question; if it were, the Circuit's approach in *Jifry* would be inconsistent with the Supreme Court's admonition that a court may not assume jurisdiction for purposes of resolving the merits of a claim." *Joumaa v. Mnuchin*, No. 17-cv-2780, 2019 WL 1559453, at *10 n.13 (D.D.C. Apr. 10, 2019), *appeal filed*, No. 19-5166 (D.C. Cir. June 6, 2019).  Defendants respectfully disagree, as the D.C. Circuit in *Jifry* did not address the Supreme Court's admonition against assuming jurisdiction.  *Jifry*, 370 F.3d at 1183.  As Article III standing is a threshold jurisdictional issue, the Court here should resolve Bazzi's constitutional claim on that basis, without assumptively reaching the merits.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95, 101 (1998).

U.S. 319, 348 (1976) (internal quotation marks and citation omitted).  In the context of OFAC's designation of a SDGT—where pre-deprivation notice is not required, *see Zevallos*, 793 F.3d at 116; *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 163-64 (D.C. Cir. 2003)—due process mandates only that OFAC provide Bazzi with "a basis from which to understand his designation, and thereby offer rebuttal arguments and evidence in response," *Zevallos*, 10 F. Supp. 3d at 131.

Here, OFAC's disclosures provided Bazzi with sufficient post-deprivation notice.  On the day he was designated, the agency issued a press release explaining that Bazzi was designated "for acting for or on behalf of his father and Hizballah financier, Mohammad Bazzi."  A.R. 2; *see also* U.S. Dep't of the Treasury, Press Release.[7]  OFAC subsequently confirmed that basis for his designation by publishing in the Federal Register an announcement that Bazzi had been designated pursuant to section 1(c) of EO 13224, A.R. 15, and providing him the administrative record underlying his designation, A.R. 19.

The agency's press release provided detailed rationale underlying that basis, explaining that Mohammad Bazzi "has been able to conduct business through" his son.  A.R. 5.  It went on to identify several companies that evidenced the two's illicit collaboration.  He coordinated with his father "to change GTG's name after GTG's designation," and "was the purported owner of this new company, likely to obscure Mohammad Bazzi's involvement and circumvent Mohammad Bazzi's designation."  *Id.*  "Additionally, Wael Bazzi likely established an account for Voltra Transcor Energy, in connection with the Mohammad Bazzi's attempted use of an intermediary company to move money to GTG and circumvent OFAC sanctions."  *Id.*  The press release also identified transactions showing their collaboration:  he "formed a petroleum company to maintain his father's

---

[7] https://home.treasury.gov/news/press-releases/sm668 (last visited November 7, 2019).

access to the oil industry," and "helped Mohammad Bazzi and a Lebanon-based associate facilitate payments for a business contract." *Id.*

The press release even provides a timeframe and location of Bazzi's support for his father. "As of at least early 2018," the agency explained, "Wael Bazzi has been witting of Mohammad Bazzi's involvement in illicit activity." *Id.* And "[s]ince his designation in May 2018," Mohammad Bazzi "has turned to his son . . . to continue doing business in the Gambia," including "bid[ding] on Gambian government contracts." *Id.* Indeed, Mohammad Bazzi's control over his son stretches back to 2017, when he "planned to submit his son . . . to fill the Lebanese Consular position in the Gambia because he could exert his influence over" him. *Id.*

This information provides Bazzi a clear path to "seek administrative reconsideration" of the designation or "assert that the circumstances resulting in the designation no longer apply." 31 C.F.R § 501.807. He "may submit arguments or evidence that [he] believes establishes that insufficient basis exists for the designation." *Id.* § 501.807(a). And with the notice that OFAC provided, he knows facts he needs to dispute. For example, he could try to dispute the charge that he established an account for Voltra Transcor Energy, which his father tried "to use as an intermediary company to move money to GTG and circumvent OFAC sanctions." A.R. 5-6. *See, e.g., Fares v. Smith*, 901 F.3d 315, 321-22 (D.C. Cir. 2018) (noting that SDNs challenging their designation submitted an "independent audit" to OFAC that was "completed by a professional-services and auditing firm" in support of their petition for "delisting"). Likewise, he could dispute that he formed a petroleum company to maintain his father's access to the oil industry.[8]

Rather than do so, Bazzi labels this notice as "conclusory," Am. Compl. ¶¶ 18-19, and claims that he has not been provided "evidence or reasoning," *id.* ¶ 20. But his Amended Complaint largely

---

[8] *See also* 31 C.F.R. § 501.807(a) (explaining other steps designee could take to try to negate basis for designation).

ignores the various details provided by the press release—such as specific names of utilized companies and transactions reflecting collaboration between the two. *Compare* Am. Compl. ¶¶ 14-23, *with* A.R. 5-6.  Bazzi received the relevant non-classified, non-privileged information in the administrative record. *See* Certification of A.R. ¶ 4 ("the documents described in the attached index constitute a true, correct, and complete copy of the non-privileged documents that were directly or indirectly considered . . . .").  All told, he received robust notice, with details "about his alleged [illicit] activities," including "entities," "types" of support, "time frames, and location[]" involved, as well as his "associations with [a]other [SDGT]." *Joumaa v. Mnuchin*, No. CV 17-2780 (TJK), 2019 WL 1559453, at *10 (D.D.C. Apr. 10, 2019) (rejecting argument that unclassified evidence "was too conclusory").

Bazzi repeatedly references that OFAC did not provide him an "unclassified summary of the redacted information contained in the Evidentiary Memorandum," Am. Compl. ¶¶ 4-5, 21, but such summaries "are not required," *FBME Bank Ltd. v. Lew*, 125 F. Supp. 3d 109, 119 n.2 (D.D.C. 2015). And though they "may be helpful to litigants," *id.*, it would serve no utility here as OFAC's notice more than satisfies due process.  Bazzi has "been apprised . . . of the government's view regarding the basis for [his] designation[], and as such, can meaningfully proffer rebuttal evidence and argument to OFAC to contest [his] designation[]." *Fares v. Smith*, 249 F. Supp. 3d 115, 127 (D.D.C. 2017) (internal quotation marks and citation omitted), *aff'd*, 901 F.3d 315 (D.C. Cir. 2018); *see also Zevallos*, 793 F.3d at 116-17 (finding that disclosure of unclassified portions of the record and SDN's ability to challenge his designation pursuant to 31 C.F.R. § 501.807 satisfied due process requirements of adequate notice and a meaningful opportunity to contest OFAC's designation).[9]

---

[9] In *Fares v. Smith*, 901 F.3d 315 (D.C. Cir. 2018), the D.C. Circuit *permitted* the reliance on summaries of protected information to support a designation, but did not squarely hold that such summaries are *required*. *Id.* at 324-25 (acknowledging out-of-circuit precedent "countenancing the use of summaries" of classified information, without holding that due process requires the provision

Because Bazzi already has legally sufficient notice, his argument boils down to claiming that OFAC acted "unfair[ly]" in relying on undisclosed classified information.  *See* Am. Compl. ¶ 6. But IEEPA authorizes OFAC to rely upon classified information without disclosing it, *see* 50 U.S.C. § 1702(c), and courts regularly allow the practice when evaluating challenges to sanctions programs, *e.g.*, *Fares*, 901 F.3d at 324-25 (rejecting argument that OFAC cannot rely on undisclosed classified and law enforcement privileged information to support a designation); *Kadi*, 42 F. Supp. 3d at 24 (finding that "it was wholly proper for OFAC to rely on classified material in making its determination").  And "due process require[s] the disclosure of *only* the unclassified portions of the administrative record."  *Holy Land Found.*, 333 F.3d at 164 (internal quotation marks and citation omitted); *Nat'l Council of Resistance of Iran*, 251 F.3d at 208-09 (holding that under due process clause, agency "need not disclose the classified information to be presented *in camera* and *ex parte* to the court," and that "[t]his is within the privilege and prerogative of the executive, and we do not intend to compel a breach in the security which that branch is charged to protect"); *see also Jifry*, 370 F.3d at 1183-84 (holding that government satisfied notice requirements of due process by informing foreign national pilots that their airmen certificates had been revoked based on TSA's determination that they were a "security threat" without requiring agency to disclose the reasons for the determination, which were classified).

Thus, even if Bazzi could claim due process protection (and he cannot), his claim still fails on the merits.

## II.      OFAC Provided Bazzi With Sufficient Notice Under the APA.

---

of such summaries).  *Fares* had no occasion to mandate such a requirement, as the plaintiffs "present[ed] a single claim on a single theory" that OFAC could not rely upon undisclosed information in the administrative record at all, a claim that the D.C. Circuit easily rejected.  *Id.* at 323, 325-26.

Bazzi also recasts his notice-based argument as an APA claim, Am. Compl. ¶¶ 29-34 (Count II), but that claim fares no better.  While the APA requires that OFAC provide Bazzi with the administrative record underlying his designation once a lawsuit is initiated, *cf. Camp v. Pitts*, 411 U.S. 138, 142 (1973) ("the focal point for judicial review should be the administrative record"), it does not entitle him to the classified or otherwise protection portions of that record.  *See, e.g., Sulemane v. Mnuchin*, Civ. No. 16-1822 (TJK), 2019 WL 77428, at *7 (D.D.C. Jan. 2, 2019) (explaining that the APA "does not require OFAC to provide Sulemane the classified or law enforcement-privileged information supporting th[e] grounds" for his designation).  Defendants have already provided Bazzi the "true, correct, and complete copy of the non-privileged documents that were directly or indirectly considered in connection with OFAC's decision to designate" him.  Certification of A.R. ¶ 4.[10]  Bazzi fails to identify an entitlement to anything further under the APA.  *Cf.* Am. Compl. ¶¶ 29-34 (citing only 5 U.S.C. § 706(2)(A), (D)).  And again, to the extent he tries to assert the Due Process Clause required more, *see* Am. Compl. ¶ 31, he cannot assert such rights here, *see supra* Part I.A.  In any event, as explained above in response to Bazzi's due process claim, whatever level of notice might be required by the APA was satisfied here in light of the April 24,

---

[10] Although not clear or connected to his claims, Bazzi apparently seeks a privilege log or some other justification for the redactions in the administrative record.  *See* Am. Compl. Relief Requested ¶ C.  But he cites no authority for such a demand, and he is not entitled to one here.  *See Fares*, 249 F. Supp. 3d at 129 n.3 (rejecting argument that OFAC was "required to produce a privilege log in conjunction with the redacted administrative record").  "[I]t is far from the norm to require agencies to produce privilege logs when they exclude material from an administrative record.  In fact, the general rule is that when documents are not part of the administrative record—having been omitted on privilege grounds—an agency that withholds these privileged documents is not required to produce a privilege log to describe the documents that have been withheld."  *FBME Bank Ltd. v. Lew*, 209 F. Supp. 3d 299, 317 (D.D.C. 2016) (internal quotation marks and citation omitted).

On page 139 of the administrative record, OFAC redacted a limited amount of information pursuant to the law enforcement privilege.  Through counsel, Bazzi informed Defendants that he does not intend to challenge that assertion of the law enforcement privilege.

2019 press release, the May 16, 2019 Federal Register notice, and the administrative record. *See supra* Part I. Accordingly, Bazzi's APA claim likewise fails.[11]

### III.    Ample Evidence Supports OFAC's Decision to Designate Bazzi as a SDGT.

As the unclassified administrative record makes clear—and the Court's *ex parte*, *in camera* review of the classified record will confirm—ample evidence supports Bazzi's designation. Even if Bazzi could somehow show some error with the notice he received (and he cannot), any such error would therefore be harmless and insufficient to warrant the relief he seeks. *See Al Haramain Islamic Found., Inc. v. U.S. Dep't of Treasury*, 686 F.3d 965, 990 (9th Cir. 2012) (affirming dismissal of due process claims because even if SDGT received "constitutionally adequate notice, we are confident that it would not have changed OFAC's ultimate designation determination."); 5 U.S.C. § 706 (requiring courts reviewing agency action to take "due account . . . of the rule of prejudicial error"). Indeed, the harmlessness of any error is confirmed by the fact that Bazzi does not even acknowledge, let alone specifically dispute, a number of instances that OFAC identified where he collaborated with his father, such as changing GTG's name and being the new company's purported owner to obscure his father's involvement and circumvent his designation, or establishing an account for Voltra Transcor Energy in connection with Mohammad Bazzi's attempt to move money to GTG and circumvent OFAC sanctions. A.R. 5.

The Court should therefore enter judgment in favor of Defendants on all of Bazzi's claims.

### CONCLUSION

For the foregoing reasons, the Court should enter judgment for Defendants.

---

[11] In the event the Court were to find that the notice provided by OFAC was inconsistent with the APA, the proper remedy would be a remand to the agency, not an order vacating Bazzi's designation. *See, e.g.*, *N. Air Cargo v. U.S. Postal Serv.*, 674 F.3d 852, 861 (D.C. Cir. 2012) ("When a district court reverses agency action and determines that the agency acted unlawfully, ordinarily the appropriate course is simply to identify a legal error and then remand to the agency, because the role of the district court in such situations is to act as an appellate tribunal.").

Dated November 12, 2019

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

DIANE KELLEHER
Assistant Branch Director

*/s/ Kevin Snell*
KEVIN SNELL
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (202) 305-0924
Fax: (202) 616-8460
Email:  Kevin.Snell@usdoj.gov