# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____

)
WAEL MUHAMMAD BAZZI )
)
                Plaintiff, )
)   Civil Action No. 1:19-cv-01940 (TNM)
     v. )
)
ANDREA M. GACKI, *et al.* )
)
           Defendants. )
_____)

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................... 1

BACKGROUND ....................................................................................................................... 2

    I.    Statutory and Regulatory Background ............................................................... 2

        A.  International Emergency Economic Powers Act ("IEEPA") .......................... 2

        B.  Executive Order 13224 ................................................................................. 3

        C.  Global Terrorism Sanctions Regulations ("GTSR") ....................................... 3

        D.  Hizballah International Financing Prevention Act of 2015 ("HIFPA") ......... 4

        E.  Hizballah Financial Sanctions Regulations ("HFSR") .................................. 5

    II.    Statement of Facts .......................................................................................... 6

        A.  Bazzi's Designation by OFAC ...................................................................... 6

        B.  OFAC's Disclosure of the Administrative Record ........................................ 7

        C.  Bazzi's Amended Complaint ......................................................................... 7

STANDARD OF REVIEW ........................................................................................................ 8

    I.    Summary Judgment Standard .......................................................................... 8

    II.    Motion to Dismiss Standard ............................................................................ 9

DISCUSSION ............................................................................................................................ 9

    I.    Bazzi is Entitled to Summary Judgment on Count I Because Defendants Failed to Provide Bazzi with Adequate Notice as to the Reasons for His Designation Under E.O. 13224 and Acted in Violation of the Due Process Clause of the Fifth Amendment to the U.S. Constitution ................................................................. 9

        A.  Bazzi Can Assert a Fifth Amendment Due Process Claim ........................... 10

        B.  Defendants Violated the Constitution's Post-Deprivation Due Process Requirement of Notice and a Hearing by Failing to Provide Adequate Notice to Bazzi as to Their Decision to Designate Him Under E.O. 13224 .................. 12

II.     Bazzi is Entitled to Summary Judgment on Count II Because Defendants Failed to Provide Him with Adequate Notice as to the Reasons for His Designation Under E.O. 13224 In Violation of the Administrative Procedure Act's Notice Requirement ....................................................................................................................... 19

III.    Bazzi is Challenging the Substance of OFAC's Decision to Designate Him Through its Administrative Reconsideration Process, and OFAC's Assertion that Ample Evidence in the Classified Record Supports his Designation Makes Clear that Defendants Violated His Rights to Due Process under the Constitution and the APA and Intend to Continue to Do So .......................................................................... 22

CONCLUSION ................................................................................................................. 24

## TABLE OF AUTHORITIES

**CASES**                                                                      **PAGE(S)**

*Aktieselskabet v. Fame Jeans*,
    525 F.3d 8, 17 (D.C. Cir. 2008) ......................................................................9

*Al Haramain Islamic Found., Inc. v. U.S. Dep't of the Treasury*,
585 F. Supp. 2d 1233 (D. Or. 2008) .............................................................. 21

*Al Haramain Islamic Found., Inc. v. U.S. Dep't of the Treasury*,
    686 F.3d 965 (9th Cir. 2012) ....................................................... 14, 15, 17, 23

*American-Arab Anti-Discrimination v. Reno*,
    70 F.3d 1045 (9th Cir. 1995) ................................................................... 15, 16

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ......................................................................................8

*Bell Atlantic Co. v. Twombly*,
    550 U.S. 544, 556 (2007) ..............................................................................9

*Browning v. Clinton*,
    292 F.3d 235 (D.C. Cir. 2002) ......................................................................9

*Cardenas v. Smith*,
    733 F.2d 909, 913 (D.C. Cir. 1984) ............................................................ 20

*Carter v. George Washington U.*,
    387 F.3d 872 (D.C. Cir. 2004) ......................................................................8

*Constructores Civiles de Centroamerica, S.A. v. Hannah*,
    459 F.2d 1183, 1190-91 (D.C. Cir. 1972) ................................................... 19

*Disconto Gesellschaft v. Umbreit*,
    208 U.S. 570, 578 (1908) ............................................................................ 20

*Fares v. Smith*,
    249 F. Supp. 3d 115 (D.D.C. 2017) .............................................. 12, 13, 14, 19

*Fares v. Smith*,
    901 F.3d 315 (D.C. Cir. 2018) ..............................................................*passim*

*FBME Bank Ltd. v. Lew*,
    209 F. Supp. 3d 299 (D.D.C. 2016) ............................................................ 10

*General Elec. Co. v. E.P.A*,
  53 F.3d 1324 (D.C. Cir. 1995) ...................................................................... 20

*Gete v. I.N.S.*,
  121 F.3d 1285 (9th Cir. 1997) ...................................................................... 13

*Herron v. Fannie Mae*,
  861 F.3d 160, 173 (D.C. Cir. 2017) ................................................................ 9

*Hill v. U.S. Parole Comm'n*,
  No. 16-1476 (JEB), 2017 WL 2414446, (D.D.C. June 2, 2017) ...................................... 20

*Holy Land Found. v. Ashcroft*,
  333 F.3d 156 (D.C. Cir. 2003) ................................................................ 14, 16

*Hopi Tribe v. Navajo Tribe*,
  46 F.3d 908 (9th Cir. 1995) ........................................................................ 21

*Howmet Corp. v. E.P.A*,
  614 F.3d 544 (D.C. Cir. 2010) ...................................................................... 20

*In re Anthem, Inc. Data Breach Litig.*,
  236 F. Supp. 3d 150 (D.D.C. 2017) ................................................................ 15

*In re Sealed Case*,
  737 F.2d 94 (D.C. Cir. 1984) ...................................................................... 15

*Jifry v. F.A.A*,
  370 F.3d 1174 (D.C. Cir. 2004) .................................................................... 12

*Joumaa v. Mnuchin*,
  No. 17-2780 (TJK), 2019 WL 1559453, (D.D.C. Apr. 10, 2019) .................................... 11

*Kadi v. Geithner*,
  42 F. Supp. 3d 1 (D.D.C. 2012) ............................................................ 9, 11, 12

*Kiareldeen v. Ashcroft*,
  273 F.3d 542 (3d Cir. 2001) ........................................................................ 17

*KindHearts for Charitable Humanitarian Dev. v. Geithner*,
  647 F. Supp. 2d 857 (N.D. Ohio 2009) ...................................................... 12, 15, 18, 21

*King & Spalding LLP v. U.S. Dep't of Health and Hum. Servs.*,
  330 F. Supp. 3d 477 (D.D.C. 2018) .................................................................. 8

*Lopez v. Council on Am.-Islamic Relations Action Network, Inc.*,
    826 F.3d 492 (D.C. Cir. 2016) ....................................................................8

*Mathews v. Eldridge*,
    424 U.S. 319 (1976) ................................................................................ 13

*Maydak v. U.S. Dep't of Justice*,
    218 F.3d 760 (D.C. Cir. 2000) ................................................................ 16

*Nat'l Council of Resistance v. Department of State*,
    251 F.3d 192 (D.C. Cir. 2001) ........................................................... 10, 15

*People's Mojahedin Org. v. Department of State*,
    327 F.3d 1238 (D.C. Cir. 2003) .............................................................. 16

*People's Mojahedin Org. of Iran v. U.S. Department of State*,
    613 F.3d 220 (D.C. Cir. 2010) .......................................................... 14, 23

*Rafeedie v. I.N.S.*,
    880 F.2d 506 (D.C. Cir. 1989) ................................................................ 16

*Satellite Broadcasting Co., Inc. v. F.C.C.*,
    824 F.2d 1 (D.C. Cir. 1987) .................................................................... 20

*Silva v. Bell*,
    605 F.2d 978 (7th Cir. 1979) .................................................................. 20

*Sulemane v. Mnuchin*,
    No. 16-1822 (TJK), 2019 WL 77428, (D.D.C. Jan. 2, 2019) .................... 15, 22

*United States v. Verdugo-Urquidez*,
    494 U.S. 259 (1990) ................................................................................ 10

*Williams-Jones v. LaHood*,
    656 F. Supp. 2d 63, 67 (D.D.C. 2009) ......................................................9

*Willis v. Nat'l Sec. Agency*,
    No. 17-cv-2038 (KBJ), 2019 WL 1924249, (D.D.C. Apr. 30, 2019) .............. 16

*Zevallos v. Obama*,
    10 F. Supp. 3d 111 (D.D.C. 2014) ...................................................8, 13, 14

*Zevallos v. Obama*,
    793 F.3d 106 (D.C. Cir. 2015) ........................................................8, 13,15, 23

**STATUTES**

5 U.S.C. § 555.................................................................................................21

5 U.S.C. § 702...........................................................................................19, 20

50 U.S.C. § 1701.............................................................................................3

50 U.S.C. § 1702.............................................................................................3

50 U.S.C. § 1704.............................................................................................3

Hizballah International Financing Prevention Act of 2015,
    Pub. L. No. 114-102, 129 Stat. 2205, 2206-2207 (2015) ..................................5

**EXECUTIVE ORDERS**

Executive Order 13224 ...............................................................................*passim*

**REGULATIONS**

31 C.F.R. §501.807 .............................................................................4, 12, 21

31 C.F.R. § 566.201 ...........................................................................5, 6, 7, 11

31 C.F.R. § 566.802 ..........................................................................................6

31 C.F.R. § 594.201 .............................................................................4, 6, 11

31 C.F.R. § 594.801 ..........................................................................................4

31 C.F.R. § 594.802 ..........................................................................................4

68 Fed. Reg. 34,196 ........................................................................................3

81 Fed. Reg. 22,185 ........................................................................................5

**RULES**

Fed R. Civ. P. 56..............................................................................................8

**OTHER MATERIALS**

U.S. Dept. of the Treasury, *Revised Guidance on Entities Owned by Persons Whose Property
and Interests in Property are Blocked*, Aug. 13, 2014 ..................................................6

## INTRODUCTION

In this matter, Plaintiff Wael Muhammad Bazzi ("Bazzi") is challenging the insufficient notice he has received concerning his designation as a Specially Designated Global Terrorist ("SDGT") by the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC"). In order to challenge his designation through OFAC's administrative reconsideration process, and demonstrate that he is not acting for or on behalf of his father, Mohammad Ibrahim Bazzi, first Bazzi needs adequate notice of OFAC's reasons for determining that he meets the criteria for designation under Executive Order ("E.O.") 13224. Adequate notice is a necessary predicate for Bazzi to be able to meaningfully participate in OFAC's administrative reconsideration process.

Contrary to Defendants' suggestion, Bazzi does not suggest that OFAC cannot rely on undisclosed classified information. Defs. Mot. at 16, ECF No. 12. Even assuming *arguendo*, however, that Defendants are not obliged to provide anything beyond the unclassified or otherwise not protected portions of the administrative record, that still would not mean that whatever information Defendants decide to offer inherently constitutes adequate notice. The question instead is whether the substance of the information conveyed *is in fact adequate*, regardless of its form. By Defendants' logic, if an entire administrative record were classified, then nothing would need to be provided to a designated party. This theory is unsound, as Defendants could then effectively withhold all the reasons for that party's designation based on their own classification determinations, including even unclassified information classified by compilation.

The administrative record disclosed to Bazzi by Defendants in this matter does not include any evidence or reasoning to establish how OFAC determined that he has acted or purported to act "for or on behalf of" his father or at his father's direction. *See* A.R. 0001-0029. Indeed,

notwithstanding the broad redactions made to the record, no unclassified summary of the redacted portions of the record was provided, and, other than the introduction and identifying information, the sole unredacted portion of the evidentiary memorandum contained only OFAC's determination that Bazzi meets the designation criteria of E.O. 13224. *See id*. Thus, despite Defendants' contention that "OFAC provided Bazzi ample notice," Defs. Mot. at 1, ECF No. 12, their substantive disclosures are limited to only the conclusory allegations leveled against Bazzi in a press release. Defendants insist that they have shown that Bazzi likely acted for or on behalf of his father, but their premises assume their own truth as no evidence has been disclosed in support of that determination. This leaves Bazzi unable to rebut OFAC's determination during the administrative reconsideration process.

This lawsuit therefore seeks disclosures that will provide Bazzi notice as to the evidence and reasoning relied upon for his designation, as opposed to solely the conclusions drawn by OFAC to support it. Disclosure of the evidence and reasoning underlying Bazzi's designation is necessary in order for Bazzi to have a meaningfully opportunity to participate in OFAC's administrative reconsideration process, and to ultimately secure a rescission of his designation. Accordingly, Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment should be denied, and summary judgment should be granted in favor of Bazzi.

## BACKGROUND

I.   STATUTORY AND REGULATORY BACKGROUND

### A.   International Emergency Economic Powers Act

The International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701 *et seq*., is the statutory basis under which most U.S. economic sanctions are implemented and administered by Defendants, including the sanctions imposed pursuant to E.O. 13224 and the Global Terrorism

Sanctions Regulations, 31 C.F.R. Part 594. IEEPA allows the President "to deal with any unusual or extraordinary threat, which has its source in whole or in substantial part outside the United States, to the national security, foreign policy, or economy of the United States, if the President declares a national emergency with respect to such threat." 50 U.S.C. § 1701(a). To do so, IEEPA provides the President with certain powers to regulate transactions involving "any property in which any foreign country or a national thereof has any interest by any person, or with respect to any property, subject to the jurisdiction of the United States." 50 U.S.C. § 1702(a)(1)(B). IEEPA further authorizes the President to issue Executive orders to impose sanctions and to issue regulations to exercise those authorities. 50 U.S.C. § 1704.

### B.      Executive Order 13224

On September 23, 2001, President George W. Bush issued E.O. 13224 in response to the "grave acts of terrorism and threats of terrorism committed by foreign terrorists…and the continuing and immediate threat of further attacks on United States nationals or the United States…."  Exec. Order No. 13224, 3 C.F.R. 13224 (2001). In order to deal with that threat, the President declared a national emergency triggering his IEEPA authorities. *Id.*

E.O. 13224 authorizes sanctions on, *inter alia*, persons determined "to act for or on behalf of those persons listed in the Annex to [that] order or those persons determined to be subject to…[that] order." Exec. Order No. 13224, § 1(c). All assets subject to U.S. jurisdiction in which persons designated under E.O. 13224 have an interest are blocked (or "frozen"), and U.S. persons are generally prohibited from engaging in any transactions with them. *Id.* at §§ 1, 2.

### C.      Global Terrorism Sanctions Regulations

On June 6, 2003, OFAC issued the Global Terrorism Sanctions Regulations ("GTSR"), 31 C.F.R. Part 594, to implement E.O. 13224. *See* 68 Fed. Reg. 34,196. The GTSR prohibit, *inter*

*alia*, all transactions that are prohibited by E.O. 13224. 31 C.F.R. § 594.201. The names of persons designated under E.O. 13224 are incorporated into OFAC's list of Specially Designated Nationals and Blocked Persons ("SDN List") with the identifying program tag "[SDGT]." 31 C.F.R. § 594.201, n.2. The GTSR also delegate to the Director of OFAC any action that the Secretary of the Treasury is authorized to take under E.O. 13224 or any Executive orders relating to the national emergency declared in that Order. 31 C.F.R. § 594.802.

The GTSR refer to OFAC's Reporting, Procedures and Penalties Regulations, 31 C.F.R. Part 501, for administrative decisions, rulemaking, and requests for documents pursuant to the Freedom of Information Act ("FOIA") and Privacy Act (5 U.S.C. §§ 552 and 552a). 31 C.F.R. § 594.801. Accordingly, pursuant to 31 C.F.R. § 501.807—the procedures governing delisting from the SDN List—an SDGT may "seek administrative reconsideration" by OFAC of a designation, or "assert that the circumstances resulting in the designation no longer apply." 31 C.F.R. §§ 594.801 & 501.807. In doing so, the SDGT may submit arguments or evidence establishing that an insufficient basis exists for the designation, and may also "propose remedial steps…which the person believes would negate the basis for designation." 31 C.F.R. § 501.807.

### D.      Hizballah International Financing Prevention Act of 2015

The Hizballah International Financing Prevention Act of 2015 ("HIFPA") authorizes the President to prescribe regulations to prohibit, or impose strict conditions on, the opening or maintaining in the United States of a correspondent account or a payable-through account by certain foreign financial institutions. Foreign financial institutions to be sanctioned under HIFPA are those determined to have: (A) knowingly facilitated a significant transaction or transactions for Hizballah; (B) knowingly facilitated a significant transaction or transactions of a person identified on the SDN List for acting for or on behalf of or at the direction of, or being owned or

controlled by, Hizballah; (C) knowingly engaged in money laundering to carry out either of the foregoing activities; or (D) knowingly facilitated a significant transaction or transactions or provide significant financial services to carry out any of the foregoing activities. *See* Hizballah International Financing Prevention Act of 2015, Pub. L. No. 114-102, 129 Stat. 2205, 2206-2207 (2015).

### E.     Hizballah Financial Sanctions Regulations

On April 15, 2016, OFAC issued the Hizballah Financial Sanctions Regulations ("HFSR"), 31 C.F.R. Part 566, to implement HIFPA. *See* 81 Fed. Reg. 22,185. The HFSR authorize the imposition of strict conditions on the opening or maintaining of correspondent or payable-through accounts in the United States of foreign financial institutions determined to engage in the activities identified by HIFPA. 31 C.F.R. § 566.201(a). Those strict conditions include: (1) prohibiting or restricting the provision of trade finance through the correspondent account or payable-through account of the foreign financial institution; (2) restricting the transactions that may be processed through the correspondent account or payable through account of the foreign financial institution to certain types of transactions, such as personal remittances; (3) placing monetary limits on, or limiting the volume of, the transactions that may be processed through the correspondent or payable-through account of the foreign financial institution; (4) requiring pre-approval from the U.S. financial institution for all transactions processed through the correspondent account or payable-through account of the foreign financial institution; or (5) prohibiting or restricting the processing of foreign exchange transactions through the correspondent account or payable-through account of the foreign financial institution. 31 C.F.R. § 566.201(b).

Persons on the SDN List that are determined by OFAC to meet the criteria of HFSR have the following descriptive text in their SDN List entries: ["Subject to secondary sanctions pursuant

to the Hizballah Financial Sanctions Regulations"]. NOTE to 31 C.F.R. § 566.201(a)(2). The HFSR authorize the Director of OFAC to take any action that the Secretary of the Treasury is authorized to take pursuant to HIFPA. 31 C.F.R. § 566.802.

## II.    STATEMENT OF FACTS

### A.    Bazzi's Designation by OFAC

On April 24, 2019, OFAC designated Bazzi pursuant to E.O. 13224 for allegedly "acting for or on behalf of Mohammad Bazzi." A.R. 0001-0008. Mohammad Bazzi is Bazzi's father, whom OFAC designated on May 17, 2018, for allegedly assisting in, sponsoring, or providing financial, material, or technological support for, or financial or other services to or in support of, Hizballah.[1] A.R. 0018. As a result of his designation, Bazzi is identified on the SDN List with the SDGT identifier and the descriptive text "Subject to secondary sanctions pursuant to the Hizballah Financial Sanctions Regulations."

Due to OFAC's designation, any assets subject to U.S. jurisdiction in which Bazzi maintains an interest are blocked, including any entities owned 50 percent or more by him. 31 C.F.R. § 594.201; *See also* U.S. Dept. of the Treasury, *Revised Guidance on Entities Owned by Persons Whose Property and Interests in Property are Blocked*, Aug. 13, 2014. In addition, U.S. persons are generally prohibited from dealing with either Bazzi or companies he owns 50 percent or more. *Id.*

Further, as Bazzi is identified on the SDN List as being "Subject to secondary sanctions pursuant to the Hizballah Financial Sanctions Regulations," foreign financial institutions will not engage in any transactions with him or his companies, lest they be exposed to any of the strict

---

[1] Mohammad Bazzi is challenging his E.O. 13224 designation in a separate litigation. *Bazzi v. Gacki*, No. 1:19-cv-00484 (D.D.C. Feb. 26, 2019).

conditions of the HFSR. 31 C.F.R. § 566.201. In sum, as a direct result of Defendants' actions, Bazzi is effectively barred from the global financial system.

### B.      OFAC's Disclosure of the Administrative Record

On June 27, 2019, Bazzi filed a lawsuit challenging his designation under E.O. 13224. Complaint for Declaratory and Injunctive Relief, ECF No. 1. Following that filing, on September 30, 2019, Defendants provided Bazzi with a redacted version of the administrative record relied upon to designate him. That record included an evidentiary memorandum which provided the purported factual and legal bases underlying OFAC's decision to designate him. A.R. 0017-0029.

Section III of the evidentiary memorandum is titled "Basis for Determination." A.R. 0019-0022. That section sets forth OFAC's conclusions and findings for its determination that "Wael Bazzi acts for or on behalf of Mohammad Ibrahim Bazzi, a person whose property and interests in property are blocked pursuant to E.O. 13224." A.R. 19 (capitalization and asterisk removed). All of OFAC's factual support for this legal determination—contained in the eight paragraphs that follow—is redacted. A.R. 19-22. With the exception of that determination, the substantive text of the evidentiary memorandum is virtually wholly redacted. *See* A.R. 0017-0026. OFAC has not provided an unclassified summary of the information redacted from the administrative record.

### C.      Bazzi's Amended Complaint

Following Defendants' disclosure of the redacted administrative record, Bazzi amended his complaint on October 14, 2019. Am. Compl., ECF No. 11. The Amended Complaint solely challenges the adequacy of notice provided to Bazzi in support of OFAC's determination to designate him under E.O. 13224. *Id.* at ¶¶ 24-34. It does not challenge the substance of OFAC's designation action because Bazzi intends to administratively challenge his designation. In order to have a meaningful opportunity to do so however, Bazzi first must have sufficient notice of the

factual conclusions and reasoning relied upon by OFAC that he must rebut. Accordingly, he has continued this lawsuit only to seek adequate notice to allow him to meaningfully participate in OFAC's administrative reconsideration process.

The Amended Complaint seeks declaratory relief from this Court, including by ordering Defendants to provide sufficient notice of the reasons for Bazzi's designation under E.O. 13224, as required by the Constitution and the APA. Am. Compl., Relief Requested, ECF No. 11.

## STANDARD OF REVIEW

### I.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A dispute is 'genuine' only if a reasonable fact-finder could find for the nonmoving party, and a fact is 'material' only if it is capable of affecting the outcome of the litigation." *King & Spalding LLP v. U.S. Dep't of Health and Hum. Servs.*, 330 F. Supp. 3d 477, 487 (D.D.C. 2018) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Granting summary judgment is appropriate if "when, viewing the evidence in the light most favorable to the non-movants and drawing all reasonable inferences accordingly, no reasonable jury could reach a verdict in their favor." *Lopez v. Council on Am.-Islamic Relations Action Network, Inc.*, 826 F.3d 492, 496 (D.C. Cir. 2016) (citing *Carter v. George Washington U.*, 387 F.3d 872, 878 (D.C. Cir. 2004)).

When a court reviews agency action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, "[t]he entire case on review is a question of law, and only a question of law." *Zevallos v. Obama*, 10 F. Supp. 3d 111, 117 (D.D.C. 2014), *aff'd*, 793 F.3d 106 (D.C. Cir. 2015). Summary judgment "serves as the mechanism for deciding, as a matter of law, whether the agency

action is supported by the administrative record and otherwise consistent with the APA standard of review." *Kadi v. Geithner*, 42 F. Supp. 3d 1, 9 (D.D.C. 2012).

## II.   MOTION TO DISMISS STANDARD

"A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a plaintiff's complaint; it does not require a court to 'assess the truth of what is asserted or determine whether a plaintiff has any evidence to back up what is in the complaint.'" *Herron v. Fannie Mae*, 861 F.3d 160, 173 (D.C. Cir. 2017) (quoting *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002)). In resolving a Rule 12(b)(6) motion, "the court must treat the complaint's factual allegations—including mixed questions of law and facts—as true and draw all reasonable inferences therefrom in the plaintiff's favor." *Williams-Jones v. LaHood*, 656 F. Supp. 2d 63, 67 (D.D.C. 2009). To survive a motion to dismiss, the facts alleged must state a facially plausible claim for relief and the court must accept as true all material factual allegations in the complaint. *Bell Atlantic Co. v. Twombly*, 550 U.S. 544, 556 (2007). A court "must not make any judgment about the probability of the plaintiff's success, for a complaint may proceed even if it appears that a recovery is remote and unlikely." *Aktieselskabet v. Fame Jeans*, 525 F.3d 8, 17 (D.C. Cir. 2008); *See generally Twombly*, 550 U.S. at 554 (2007).

## DISCUSSION

### I.   BAZZI IS ENTITLED TO SUMMARY JUDGMENT ON COUNT I BECAUSE DEFENDANTS FAILED TO PROVIDE BAZZI WITH ADEQUATE NOTICE AS TO THE REASONS FOR HIS DESIGNATION UNDER E.O. 13224 AND ACTED IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE U.S. CONSTITUTION

Contrary to Defendants' assertions, the disclosed administrative record fails to provide Bazzi with sufficient notice of the basis of his designation under E.O. 13224. By failing to provide Bazzi with sufficient evidence and reasoning relied upon to support OFAC's designation of Bazzi,

Defendants have violated the Fifth Amendment Due Process Clause. Accordingly, Bazzi respectfully requests that the Court grant summary judgment as to Count I. In doing so, Bazzi also requests an order directing Defendants either to disclose the redacted portions of the administrative record or to provide alternative means by which Bazzi can understand the factual bases for his designation, so that he can have a meaningful opportunity to respond to OFAC's designation.

### A.     Bazzi Can Assert a Fifth Amendment Due Process Claim

Defendants suggest that Bazzi cannot assert a constitutional claim to due process rights. Def's. Mot. at 10, ECF No. 12. Defendants, however, acknowledge that the D.C. Circuit has not directly addressed what types of connections are substantial enough to afford constitutional protections within the context of an OFAC sanctions case. *Id.* at 11.

Defendants attempt to distinguish the D.C. Circuit's discussion of "substantial connections" issues and continue to draw comparisons to judicial challenges of designations of Foreign Terrorist Organizations ("FTOs"). Defs. Mot. at 11, ECF No. 12. The cited cases, however, do not include any definitive ruling on what constitutes "substantial connections" for a foreign person subject to U.S. economic sanctions. *See Nat'l Council of Resistance v. Dep't. of St. ("NCORI"),* 251 F.3d 192, 202 (D.C. Cir. 2001) ("In any event, we are not undertaking to determine, as a general matter, how 'substantial' an alien's connections with this country must be to merit the protections of the Due Process Clause or any other part of the Constitution"); *See also FBME Bank Ltd. v. Lew*, 209 F. Supp. 3d 299, 327 (D.D.C. 2016) (noting that caselaw is surprisingly sparse on what quantum of contacts are sufficient under *United States v. Verdugo-Urquidez*, 494 U.S. 259 (1990)).

Specifically, courts have not decided the extent of contact with the United States that a foreign person sanctioned by OFAC must have in order to claim due process protections, nor have

courts set any specific standard for that determination. Def's. Mot. at 11, ECF No. 12. *See also Kadi v. Geithner,* 42 F. Supp. 3d 1, 25 (D.D.C. 2012) ("The D.C. Circuit has not explicitly addressed what criteria the Court should apply in considering whether a foreign national residing outside the United States can satisfy the 'substantial connection' test to raise rights under the U.S. Constitution related to the blocking or freezing of his assets. Nor has the D.C. Circuit addressed whether such rights turn on the presence of property in the United States, or whether [Plaintiff] can raise certain constitutional claims, but not others.")

Bazzi's Amended Complaint clearly states that OFAC was responsible for designating him, and the legal consequences of Bazzi's designation clearly stem from Defendants' actions. *See* A.R. 0009-0016. As a direct result of those actions, Bazzi has been effectively barred from financial institutions worldwide, and anyone—located anywhere in the world—who deals with him may be subject to consequences under the GTSR and HFSR for doing so. *See* 31 C.F.R. § 594.201, 31 C.F.R. § 566.201. Thus, the universal consequences of Bazzi's designation support a due process claim, and Defendants have not cited any authority holding that a foreign person who has been subjected to such consequences as a direct result of legal action by the United States Government may not be extended Fifth Amendment protections.

Further, Defendants' disagree with the recent conclusion of another court in this district that "the question of whether a foreign plaintiff may bring a Fifth Amendment due process claim is not a jurisdictional question; if it were, the Circuit's approach in *Jifry* would be inconsistent with the Supreme Court's admonition that a court may not assume jurisdiction for purposes of resolving the merits of a claim." Def's. Mot. at 12 n. 6, ECF No. 12; *See also Joumaa v. Mnuchin*, No. 17-cv-2780, 2019 WL 1559453, at 10 n. 13 (D.D.C. Apr. 10, 2019). The court in that matter—consistent with the conclusions of the D.C. Circuit—correctly declined to dismiss a claim based

11

on the question alone of the plaintiff's connections to the United States. *Id.*; *See also Jifry v. FAA*, 370 F.3d 1174, 1183 (D.C. Cir. 2004) (finding that the Court "need not decide whether or not [foreign plaintiffs] are entitled to constitutional protections because even assuming that they are, they have received all the process that they are due under our precedent"); *Fares v. Smith*, 249 F. Supp. 3d 115, 122 (D.D.C. 2017), aff'd, 901 F.3d 315 (D.C. Cir. 2018) (affirming grant of summary judgment on Fifth Amendment due process claim without resolving sufficiency of plaintiff's U.S. connections).

Accordingly, under these considerations set forth by the courts, Bazzi has nonetheless demonstrated his claim to due process under the Constitution and right to be heard before this Court. *See Kadi,* 42 F. Supp. 3d 1, 26. ("We have no idea of the truth of the allegation but for the present purposes, the colorable allegation would seem enough to support their due process claims.")

> **B.    Defendants Violated the Constitution's Post-Deprivation Due Process Requirement of Notice and a Hearing by Failing to Provide Adequate Notice to Bazzi as to Their Decision to Designate Him Under E.O. 13224**

Defendants claim that the information in the redacted administrative record "provides Bazzi a clear path to 'seek administrative reconsideration' of the designation or 'assert that the circumstances resulting in the designation no longer apply.'" Defs. Mot. at 14, ECF No. 12; *See also* 31 C.F.R. § 501.807. This, however, is not the case.

"Constitutionally sufficient notice should give the party an understanding of the allegations against it so that it has the opportunity to make a meaningful response. The party must be able to know the conduct on which the government bases its action, so that it can explain its conduct or otherwise respond to the allegations. It must also have reasonable access to the evidence that the government is using against them." *KindHearts for Charitable Humanitarian. Dev. v. Geithner*,

647 F. Supp. 2d 857, 901 (N.D. Ohio 2009) (referring to *Gete v. I.N.S.*, 121 F.3d 1285, 1297-98 (9th Cir. 1997); *See also Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976)). These same standards have been applied in cases where foreign nationals have challenged their designations by OFAC. *See Fares v. Smith*, 901 F.3d 315, 323 (D.C. Cir. 2018) (noting that "[t]o determine whether OFAC's designation of a plaintiff provides constitutionally adequate notice—enabling him meaningfully to avail himself of his opportunity to be heard—courts weigh [the] three factors under the familiar *Mathews v. Eldridge* balancing test....").

Defendants cite *Zevallos v. Obama*, 793 F.3d 106 (D.C. Cir. 2015), to suggest that where pre-deprivation notice is not required, OFAC must only provide Bazzi with "a basis from which to understand his designation, and thereby offer rebuttal arguments and evidence in response." Def's. Mot. at 13, ECF No. 12. The court's reasoning in *Zevallos*, however, contrasted the specific facts of that case with the facts before the courts in *KindHearts for Charitable Humanitarian Dev., Inc. v. Geithner* and *Al Haramain Islamic Found., Inc. v. U.S. Dep't of the Treasury*. *Zevallos*, 793 F.3d 106 at 117. In those cases, the respective courts were troubled by the fact that the designated plaintiffs were "left in the dark as to the reasons for their designations, and therefore could not meaningfully refute the evidence against them." *Zevallos*, 10 F. Supp. 3d at 131. Simply put, courts have not found just "a basis" to be sufficient where it offers no opportunity to make a meaningful response.

Defendants also refer to the D.C. District Court's decision in *Fares* to claim that Bazzi has similarly "been apprised…of the government's view regarding the basis for [his] designation[]…." Def's. Mot. at 15, ECF No. 12; *See also Fares v. Smith*, 249 F. Supp. 3d 115, 127 (D.D.C. 2017). In that case, however, the court referred to the same comparison made in *Zevallos* between *KindHearts* and *Al Haramain*, and found that unlike in *Al Haramain* and *KindHearts,* the plaintiffs

in *Fares* were apprised of the Government's basis for their designations, primarily via an unclassified summary of privileged information. *Fares*, 249 F. Supp. 3d at 127 (D.D.C. 2017) (citing *Zevallos*, 10 F. Supp. 3d at 131) (internal citations omitted). Accordingly, the court held that the plaintiffs in *Fares* could meaningfully proffer rebuttal evidence and arguments to OFAC to contest their designations. *Fares*, 249 F. Supp. 3d at 127 (citing *Zevallos*, 10 F. Supp. 3d at 131) (internal citations omitted).

Defendants further maintain that in a sanctions designation context, the D.C. Circuit has held that "due process require[s] the disclosure of only the unclassified portions of the administrative record." *Holy Land Foundation v. Ashcroft*, 333 F.3d 156, 164 (D.C. Cir. 2003); *See* Def's. Mot. at 16, ECF No. 12. In *Holy Land*, however, the plaintiffs never raised the specific issue of whether a statement of reasons is required by due process, and courts have since reasoned that the notice given in *Holy Land* had sufficiently disclosed the reasons for OFAC's investigation. *See Al Haramain Islamic Found., Inc.*, 686 F.3d at 987 (assessing *Holy Land*, 333 F.3d at 164). Thus, the requirements of due process are not defined by the form of the information that the Government chooses to disclose to a designated party, but instead depend on the specific circumstances of a given situation. *Fares*, 249 F. Supp. at 122, *aff. Fares v. Smith*, 901 F.3d 315 (D.C. Cir. 2018) ("Due process is flexible and calls for such procedural as the particular situation demands.")

In the context of an OFAC designation, the D.C. Circuit has reasoned that an administrative decision critically relying on undisclosed classified material would not necessarily comport with due process, especially where a classified record is essential to upholding the action. *Fares,* 249 F. Supp. 3d at 123 *(*citing *People's Mojahedin Org. of Iran v. U.S. Dep't of State,* 613 F.3d 220, 231 (D.C. Cir. 2010)). Furthermore, agency disclosure of some but not all of the allegations against

designated parties "impairs their ability to fully clear their names for delisting, leaving them 'stumbl[ing] towards a moving target.'" *Fares v. Smith*, 901 F.3d at 322 (citing *Zevallos*, 793 F.3d at 118). For example, courts have held that OFAC's disclosure of "only one of three reasons for its investigation and designation rendered the notice incomplete such that it did not meet the requirements of due process." *Id.* (referring to *Al Haramain*, 686 F.3d at 986) (internal citations omitted); *See also KindHearts for Charitable Humanitarian Dev.*, 647 F. Supp. 2d at 903 (holding OFAC's disclosure of a letter informing KindHearts of the agency's decision, the thirty-five unclassified, non-privileged exhibits, and a redacted version of the provisional determination evidentiary memorandum to be inadequate notice because they left KindHearts "largely uninformed about the basis for the government's actions"). In short, both the D.C. Circuit and other courts have required designated parties to have "the opportunity to present…such evidence as those [persons] may be able to produce to rebut the administrative record or otherwise negate the proposition" supporting the Government's designation. *Fares*, 901 F.3d at 322 (citing *NCORI*, 251 F.3d 192, 209 (D.C. Cir. 2001)).

Courts have further held that the Government's reliance on undisclosed classified evidence "is 'presumptively unconstitutional' *subject to the government's overcoming the presumption* in 'the most extraordinary circumstances.'" *Al Haramain*, 686 F.3d at 981 (emphasis added) (citing *American-Arab Anti-Discrimination v. Reno*, 70 F.3d 1045, 1070 (9th Cir. 1995). Moreover, the burden is on the Government to provide specific facts or information in support of its refusal to provide the classified or otherwise privileged information that a plaintiff seeks. *See In re Anthem, Inc. Data Breach Litig.*, 236 F. Supp. 3d 150, 158 (D.D.C. 2017) ("the Government bears the burden of proving each element of the privilege it asserts") (referring to *In re Sealed Case*, 737 F.2d 94, 99 (D.C. Cir. 1984)); *See also Sulemane v. Mnuchin,* Civil Action No. 16-1822 (TJK),

2019 WL 77428 (D.D.C. Jan. 2, 2019).[2] Even in the context of the Freedom of Information Act ("FOIA"), the Government "bears the burden of demonstrating that any withheld information falls within the claimed exemptions" of the nine categories outlined in 5 U.S.C. § 552(b)—including classified or law enforcement exemptions. *Willis v. Nat'l Sec. Agency*, No. 17-cv-2038 (KBJ), 2019 WL 1924249 (D.D.C. Apr. 30, 2019) (referring to *Maydak v. U.S. Dep't of Justice,* 218 F.3d 760, 764 (D.C. Cir. 2000).

Bazzi does not seek a fully unredacted administrative record, but rather disclosures in line with the D.C. Circuit's ruling that reliance on undisclosed classified evidence is permissible "only in the most extraordinary circumstances and strongly disfavored." *Fares*, 901 F.3d at 324 (internal citations omitted); *See also Rafeedie v. I.N.S.,* 880 F.2d 506, 516 (D.C. Cir. 1989). As the D.C. Circuit clearly noted, judges are "necessarily wary of one-sided process because there is an exceptionally high risk of erroneous deprivation when undisclosed information is used." *Fares*, 901 F.3d at 324 (citing *American-Arab Anti-Discrimination v. Reno,* 70 F.3d 1045, 1069 (9th Cir. 1995) (internal citations omitted)). As a result, the D.C. Circuit has countenanced the use of undisclosed classified evidence in the OFAC designation context only where there is no alternative means of disclosure. *See Fares*, 901 F.3d at 324; *NCORI,* 251 F.3d at 208; *People's Mojahedin Org. v. Department of St.,* 327 F. 3d 1238, 1242 (D.C. Cir. 2003); *Holy Land*, 333 F.3d at 164.

---

[2] Defendants' Note 10 to their Motion to Dismiss or, in the Alternative, for Summary Judgment states that Bazzi apparently seeks a privilege log or some other justification for the redactions in the administrative record in view of Am. Compl. Relief Requested ¶ C, ECF No. 11. Defs. Mot. at 17 n. 10, ECF No. 12. While Defendants state that OFAC is not required to produce a privilege log in conjunction with a redacted administrative record, Bazzi is not necessarily requesting a "privilege log." Bazzi does not seek a "privilege log" itemizing or describing withheld documents, but rather seeks to ensure that Defendants' redactions from the administrative record properly fall within the scope of the claimed exemptions from disclosure. To the extent that review by this Court finds that not to be the case, a privilege log may be appropriate.

Naturally, Bazzi cannot himself review the classified or otherwise privileged information that Defendants have critically relied upon to designate him in order to evaluate whether Defendants' reliance on undisclosed classified evidence is permissible in this context. Thus, consistent with the relief sought in his Amended Complaint, Bazzi respectfully requests that this Court make that determination through an *ex parte* and *in camera* review, in accordance with 50 U.S.C. § 1702(c). *See* Am. Compl. Relief Requested ¶ A-C, ECF No. 11.

If the Court is satisfied that the withheld information cannot be disclosed due to national security concerns, the D.C. Circuit has held that even in those "narrow category of cases, other procedural safeguards suffice[] to provide meaningful protections of due process interests…and prevent government overreach." *See Fares*, 901 F.3d at 319, 324. These procedural safeguards require the Government to disclose to designated parties "sufficiently specific 'unclassified summaries'" that provide the "'who,' 'what,' 'when,' and 'where' of the allegations.'" *Id*. at 324 (quoting *Kiareldeen v. Ashcroft*, 273 F.3d 542, 548 (3d Cir. 2001)); *See also Al Haramain*, 686 F.3d at 982-983 (finding that there are other means for the Government to provide information that do not implicate national security, including through unclassified summaries and/or review by lawyers with appropriate security clearances). Ultimately, OFAC must "defend[] its failure to provide such alternative disclosure measures." *Al Haramain*, 686 F.3d at 983.

Defendants argue that their disclosures identify the alleged conduct demonstrating that Bazzi has acted or purported to act "for or on behalf of" his father or at his father's direction. *See* Defs. Mot. at 13-15, ECF No. 12; A.R. 0001-0008. These allegations do not, however, adequately identify those activities to support Defendants' conclusion. Being provided nothing more than caveated and conclusory characterizations of activities that were "likely" for or on behalf of his father prevents Bazzi from meaningfully rebutting the allegations against him with something

more than a general denial. *See id.* In other words, Defendants assume the truth of their conclusions

instead of supporting them. *Id.* Furthermore, Defendants' allegations include speculation unrelated

to the designation that "Mohammad Bazzi's control over his son stretches back to 2017, when he

'planned to submit his son…to fill the Lebanese Consular position in the Gambia because he could

exert his influence over' him," notwithstanding the fact that Mohammad Bazzi was not designated

in 2017 and therefore alleged activities at that time for or on his behalf would not support a

designation of Bazzi by OFAC. Defs. Mot. at 14, ECF No. 12. This is because he could not be said

to have been acting for or on behalf of a person listed in the Annex or subject to E.O. 13224, as

Mohammad Bazzi was not designated until 2018. Moreover, it is unclear how any purported plan

by Mohammad Bazzi to submit his son for consideration for a job because of a belief that he could

influence him would mean that Bazzi was acting on Mohammad Bazzi's behalf. OFAC offered no

evidence or reasoning to suggest that Bazzi was a participant in that plan, nor that he ever attained

the position.

Contrary to Defendants' assertions, these conclusory, caveated, and speculative disclosed

allegations do not provide Bazzi with a clear path to "seek administrative reconsideration" of the

designation or "assert that the circumstances resulting in the designation no longer apply." *Id.* At

this point, Bazzi would only be able to provide blanket denials of those allegations to OFAC during

an administrative reconsideration process, as the agency has not provided any information on how

it arrived at its conclusions. *See KindHearts for Charitable Humanitarian. Dev.*, 647 F. Supp. 2d

at 903 n.25 ("To the extent that OFAC contends, or might contend, that KindHearts knew itself

what it was doing, where its funds were going and the unlawfulness of their destination, such

response on its part is unavailing. Notice is to come from the government because it alone knows

what it believes, and why what it believes justifies its actions.") Defendants themselves suggest as

much, saying that he could simply "dispute" the claims against him. Defs. Mot. at 14, ECF No. 12. Further, at this time an "independent audit"—as Defendants reference in citing *Fares v. Smith*—also is unwarranted when Bazzi is still "for want of opportunities to present evidence to rebut those allegations [against him]." *Fares,* 249 F. Supp. 3d at 128. In *Fares,* the plaintiffs had been provided with four pages of unclassified summaries of otherwise privileged information from the redacted administrative record underlying their designation. *Id.* Without more specifics as to Bazzi's alleged sanctionable activity, submitting to an independent audit in an administrative reconsideration process would be as empty a gesture as a blanket denial.

For the foregoing reasons, the Court should order Defendants to remedy the inadequate notice they have provided to Bazzi.

## II. BAZZI IS ENTITLED TO SUMMARY JUDGMENT ON COUNT II BECAUSE DEFENDANTS FAILED TO PROVIDE HIM WITH ADEQUATE NOTICE AS TO THE REASONS FOR HIS DESIGNATION UNDER E.O. 13224 IN VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT'S NOTICE REQUIREMENT

The APA was intended to curtail abuse of power by executive agency officials, and it contains a strong presumption of judicial review for "[a] person suffering legal wrong because of agency action" or "adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. Under the APA, the term "person" is not limited to U.S. persons, and foreign persons aggrieved by U.S. agency actions have been permitted to challenge those actions. *See Constructores Civiles de Centroamerica, S.A. v. Hannah*, 459 F.2d 1183, 1190-91 (D.C. Cir. 1972) (noting that APA review is afforded to "any person," not "any citizen," and permitting a nonresident Honduran corporation to maintain action against the Agency for International Development). Defendants themselves separately cite *FBME Bank Ltd*, 209 F. Supp. 3d at 308-10, where a Tanzanian-chartered commercial bank operating mainly in Cyprus

challenged under the APA a "special measure" imposed against it by the United States Department of the Treasury's Financial Crimes Enforcement Network ("FinCEN").

Foreign nationals abroad can therefore bring APA claims so long as they were "adversely affected or aggrieved by agency action within the meaning of a relevant statute." *See* 5 U.S.C. § 702. Further, foreign persons who experience such harm maintain Article III standing before U.S. courts, and the Supreme Court has held that foreign nationals, "by the policy and practice of the courts of this country, are ordinarily permitted to resort to the courts for the redress of wrongs and the protection of their rights." *See Disconto Gesellschaft v. Umbreit*, 208 U.S. 570, 578 (1908); *See also Cardenas v. Smith*, 733 F.2d 909, 913 (D.C. Cir. 1984) ("For purposes of Article III standing, Cardenas' status as a nonresident alien does not obviate the existence of her injury; it is the injury and not the party that determines Article III standing."); *Silva v. Bell*, 605 F.2d 978, 984-85 (7th Cir. 1979) (holding that analysis of injury for standing purposes is not affected by nonresident status in the country and granting standing for foreign plaintiffs outside the United States).

Courts in this Circuit have routinely held that the traditional concepts of due process are incorporated into administrative law. *Howmet Corp. v. E.P.A.*, 614 F.3d 544, 553 (D.C. Cir. 2010) (citing to *Satellite Broadcasting Co., Inc. v. F.C.C.*, 824 F.2d 1, 3 (D.C. Cir. 1987)); *See also Hill v. U.S. Parole Comm'n*, No. 16-1476 (JEB), 2017 WL 2414446 *13 (D.D.C. June 2, 2017) (referring to *General Elec. Co. v. E.P.A.*, 53 F.3d 1324, 1328 (D.C. Cir. 1995) "[b]oth due process *and* administrative law require that a person receive fair notice before certain hearings are held" (emphasis added)).

In *Al-Haramain,* the plaintiff had challenged under the APA the lack of procedural safeguards and regulations in the designation process by arguing that it was arbitrary and

capricious that none of OFAC's regulations identify any procedural or substantive criteria to guide the process. *KindHearts for Charitable Human. Devel.*, 647 F. Supp. 2d at 898 (citing *Al Haramain Islamic Foundation, Inc.*, 585 F. Supp. 2d at 1253). In response, the court in *Al-Haramain* held that in the absence of agency regulations, the requirements of due process apply. *Id.* (citing *Hopi Tribe v. Navajo Tribe*, 46 F.3d 908, 919 (9th Cir. 1995)). This mandate also supports administrative procedures which allow interested persons to appear before an agency to seek a "determination of an issue, request, or controversy in a proceeding…." 5 U.S.C. § 555(b).

OFAC implements the procedural requirements of 5 U.S.C. § 555(b) through its delisting procedures, which allow persons to pursue administrative reconsideration of their designations or assert that the circumstances giving rise to their designations are no longer applicable. 31 C.F.R. § 501.807. Under these procedures, designated persons are expressly permitted to provide evidence or arguments that they believe establish that there is an insufficient basis for the designation or propose remedial steps which they believe would negate the basis for designation. 31 C.F.R. § 501.807(a). These procedures presume that designated persons have an understanding of the reasons for their designation, and are thus in a position to offer evidence believed to rebut OFAC's allegations or propose remedial steps that would negate the factual basis for that designation. As detailed above, however, courts examining OFAC's procedures have held that "[n]otice is to come from the government because it alone knows what it believes, and why what it believes justifies its actions." *KindHearts for Charitable Human. Devel.*, 647 F. Supp. 2d at 903 n.25.

Additionally, Defendants have cited *Sulemane v. Mnuchin* in asserting that Bazzi is not entitled to classified or otherwise protected portions of the administrative record. Def's. Mot. at 17, ECF No. 12. While the court in *Sulemane* held that § 555(e) of the APA "does not require OFAC to provide Sulemane the classified or law enforcement-privileged information supporting

th[e] grounds" for his designation, the reasoning was in the context of an administrative proceeding before the agency. *Sulemane v. Mnuchin*, No. 16-1822 (TJK), 2019 WL 77428 *14-16 (D.D.C. Jan. 2, 2019). Unlike *Sulemane*, however, Bazzi has not had any petition denied by OFAC, and thus § 555(e) of the APA is not implicated. Rather, Bazzi is challenging the adequacy of notice under the broader due process requirements imposed on OFAC under the APA. *Id.* at 16.

As the APA mandates that in the absence of OFAC's procedural or substantive criteria governing its designation process, the protections of due process apply to Bazzi, regardless of whether he is separately entitled to them under the Fifth Amendment. Defendants acknowledge that the APA requires them to provide Bazzi the administrative record underlying his designation, however, they contend that OFAC only need disclose the unclassified portions of that record. Def's. Mot. at 17, ECF No. 12. For the same reasons noted above, however, the disclosed portion of that record here is insufficient to satisfy the APA's requirements. Accordingly, the Court should order Defendants to remedy the inadequate notice they have provided to Bazzi, as their disclosures thus far are in violation of the APA's notice requirement.

III. **BAZZI IS CHALLENGING THE SUBSTANCE OF OFAC'S DECISION TO DESIGNATE HIM THROUGH ITS ADMINISTRATIVE RECONSIDERATION PROCESS, AND OFAC'S ASSERTION THAT AMPLE EVIDENCE IN THE CLASSIFIED RECORD SUPPORTS HIS DESIGNATION MAKES CLEAR THAT DEFENDANTS VIOLATED HIS RIGHTS TO DUE PROCESS UNDER THE CONSTITUTION AND THE APA AND INTEND TO CONTINUE TO DO SO**

Defendants contend that any due process errors on their part are harmless, and circularly deem that contention confirmed because Bazzi has not acknowledged or disputed OFAC's allegations against him. Def's. Mot. at 18, ECF No. 12. As noted throughout this Memorandum, Bazzi is not challenging OFAC's designation determination in this litigation, but rather the insufficient notice he has received in violation of the Constitution and the APA. Bazzi is not arguing insufficient notice *instead* of challenging OFAC's findings, but rather as a necessary

predicate for him to be able to meaningfully challenge his designation through OFAC's administrative reconsideration process.

As Bazzi is only challenging the notice provided to him, dismissal of Counts I and II of the Amended Complaint is unwarranted—in *Al Haramain*, the case Defendants cite in support of their harmless error argument, the plaintiffs were also challenging their designations. *Al Haramain Islamic Found., Inc.*, 686 F.3d at 990. Therefore, the reasoning cited by Defendants from that case—and the rule of prejudicial error in 5 U.S.C. § 706—regarding the harmlessness of any procedural due process violations is inapposite.

Further, Defendants assert that the "unclassified administrative record makes clear—and the Court's *ex parte*, *in camera* review of the classified record will confirm—ample evidence supports Bazzi's designation." Def's. Mot. at 18, ECF No. 12. Defendants, however, also concede that the harmlessness of any error with the notice that Bazzi already received "would not have changed OFAC's ultimate designation determination." *Id.* at 18 (citing to *Al Haramain Islamic Found., Inc.*, 686 F.3d at 990). This concession by Defendants, in fact, confirms the inadequacy of the notice Bazzi has received, as they acknowledge that they are critically relying on undisclosed classified material, and their reliance does not necessarily comport with due process where a classified record is essential to upholding the action. *Fares,* 249 F. Supp. 3d at 123 *(*citing *People's Mojahedin Org. v. U.S. Dep't of State,* 613 F.3d at 231); *Zevallos*, 793 F.3d at 118.

The Court should therefore enter judgment in favor of all of Bazzi's claims and deny Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment, grant Bazzi's Motion for Summary Judgment, and enter judgment in favor of Bazzi on all claims.

Dated: December 10, 2019                                    Respectfully submitted,


                                                           /s/ Erich C. Ferrari
                                                           Erich C. Ferrari, Esq.
                                                           FERRARI & ASSOCIATES, P.C.
                                                           1455 Pennsylvania Avenue, NW
                                                           Suite 400
                                                           Washington, D.C. 20004
                                                           Telephone: (202) 280-6370
                                                           Fax: (877) 448-4885
                                                           Email: ferrari@falawpc.com
                                                           D.C. Bar No. 978253

                                                           Attorney for Plaintiff
                                                           *Wael Muhammad Bazzi*