**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| WAEL MUHAMMAD BAZZI,<br><br>               Plaintiff,<br><br>     v.<br><br>ANDREA M. GACKI, in her official capacity as Director of the U.S. Department of the Treasury, Office of Foreign Assets Control, and UNITED STATES DEPARTMENT OF THE TREASURY, OFFICE OF FOREIGN ASSETS CONTROL,<br><br>               Defendants. | Civil Action No. 19-cv-01940 (TNM) |

<u>**COMBINED REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGEMENT AND MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**</u>

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................1

ARGUMENT ....................................................................................................................2

I.    Bazzi Cannot Assert a Due Process Claim, and Even If He Could, Defendants
      Provided Him with More Notice Than was Due ................................................. 2

      A.    Bazzi Cannot Establish A Connection to the United States Warranting Due
            Process Protection, and His Argument Lacks Supporting Precedent ..................... 2

      B.    Defendants Have Provided Bazzi Ample Notice, and Thus his Due Process Claim
            Fails on the Merits ....................................................................................... 5

            1.    IEEPA Allows Defendants to Rely on Classified Information that is Not
                  Disclosed to Plaintiff, and Courts Regularly Permit the Practice ...............6

            2.    Bazzi's Complaints with the Extensive Notice Defendants Provided Do
                  Not Establish a Due Process Violation .......................................................9

II.   Bazzi Confirms that his APA Claim Lacks Any Statutory Foundation and is
      Without Precedent .......................................................................................... 12

III.  Bazzi Cannot Show Entitlement to Relief Because Ample Evidence Supports His
      Designation as a SDGT .................................................................................... 15

CONCLUSION ................................................................................................................17

# TABLE OF AUTHORITIES

**Cases**

*32 Cty. Sovereignty Comm. v. U.S. Dep't of State,*
  292 F.3d 797 (D.C. Cir. 2002) ................................................................. 4

*Al Haramain Islamic Found., Inc. v. U.S. Dep't of Treasury,*
  585 F. Supp. 2d 1233 (D. Or. 2008) ....................................................... 13

*Al Haramain Islamic Found., Inc. v. U.S. Dep't of Treasury,*
  686 F.3d 965 (9th Cir. 2012) .......................................................... *passim*

*Am.-Arab Anti-Discrimination Comm. v. Reno,*
  70 F.3d 1045 (9th Cir. 1995) ............................................................... 6, 7

*Cardenas v. Smith,*
  733 F.2d 909 (D.C. Cir. 1984) ............................................................... 13

*Chai v. U.S. Dep't of State,*
  466 F.3d 125 (D.C. Cir. 2006) .............................................................. 16

*Constructores Civiles de Centroamerica, S. A. (CONCICA) v. Hannah,*
  459 F.2d 1183 (D.C. Cir. 1972) ............................................................ 13

*Disconto Gesellschaft v. Umbreit,*
  208 U.S. 570 (1908) ............................................................................... 13

*Fares v. Smith,*
  249 F. Supp. 3d 115 (D.D.C. 2017) ................................................ *passim*

*Fares v. Smith,*
  901 F.3d 315 (D.C. Cir. 2018) ........................................... 5, 7, 9, 11, 12

*FBME Bank Ltd. v. Lew,*
  125 F. Supp. 3d 109 (D.D.C. 2015) ...................................................... 6, 9

*FBME Bank Ltd. v. Lew,*
  209 F. Supp. 3d 299 (D.D.C. 2016) ................................................. 4, 7, 14

*Hill v. U.S. Parole Comm'n,*
  No. CV 16-1476 (JEB), 2017 WL 2414446 (D.D.C. June 2, 2017) ........................................ 13

*Holder v. Humanitarian Law Project,*
  561 U.S. 1 (2010) ................................................................................... 11

*Holy Land Found. for Relief & Dev. v. Ashcroft,*
  333 F.3d 156 (D.C. Cir. 2003) .......................................................... 6, 7, 8

ii

*Howmet Corp. v. EPA*,
  656 F. Supp. 2d 167 (D.D.C. 2009), *aff'd*, 614 F.3d 544 (D.C. Cir. 2010) ............................ 13

*In re Anthem, Inc. Data Breach Litig.*,
  236 F. Supp. 3d 150 (D.D.C. 2017) ........................................................................................ 7

*Islamic Am. Relief Agency v. Gonzales*,
  477 F.3d 728 (D.C. Cir. 2007) ............................................................................................ 16

*\*Jifry v. FAA*,
  370 F.3d 1174 (D.C. Cir. 2004) ........................................................... 2, 5, 8, 11, 16

*Jo v. Dist. of Columbia*,
  582 F. Supp. 2d 51 (D.D.C. 2008) ................................................................................... 3, 4

*Joumaa v. Mnuchin*,
  No. 17-cv-2780-TJK, 2019 WL 1559453 (D.D.C. Apr. 10, 2019), *appeal filed*, No. 19-5166
  (D.C. Cir. June 6, 2019), .............................................................................. 5, 11, 15

*Kadi v. Geithner*,
  42 F. Supp. 3d 1 (D.D.C. 2012) ..................................................................................... 3, 4, 12

*Kiareldeen v. Ashcroft*,
  273 F.3d 542 (3d Cir. 2001) ............................................................................................. 11

*KindHearts for Charitable Humanitarian Development Inc. v. Geithner*,
  647 F. Supp. 2d 857 (N.D. Ohio 2009) ................................................................................. 12

*Morrissey v. Brewer*,
  408 U.S. 471 (1972) ............................................................................................................. 11

*Nat'l Council of Resistance of Iran v. U.S. Dep't of State ("Nat'l Council")*,
  251 F.3d 192 (D.C. Cir. 2001) .................................................................................... *passim*

*People's Mojahedin Org. of Iran v. U.S. Dep't of State ("PMOI I")*,
  182 F.3d 17 (D.C. Cir. 1999) ............................................................................................... 3

*People's Mojahedin Org. of Iran v. U.S. Dep't of State ("PMOI II")*,
  327 F.3d 1238 (D.C. Cir. 2003) ................................................................................... *passim*

*People's Mojahedin Org. of Iran v. U.S. Dep't of State ("PMOI III")*,
  613 F.3d 220 (D.C. Cir. 2010) ...................................................................................... 8, 16

*Silva v. Bell*,
  605 F.2d 978 (7th Cir. 1979) ............................................................................................... 14

*Sulemane v. Mnuchin*,
  No. 16-cv-1822-TJK, 2019 WL 77428 (D.D.C. Jan. 2, 2019) ........................................... 7, 15

*United States v. Verdugo-Urquidez*,
  494 U.S. 259 (1990) ................................................................................................... 3

*Williams v. Lew*,
  819 F.3d 466 (D.C. Cir. 2016) .................................................................................. 3

*Willis v. Nat'l Sec. Agency*,
  No. 17-cv-2038-KBJ, 2019 WL 1924249 (D.D.C. Apr. 30, 2019) ........................... 7

*\*Zevallos v. Obama*,
  10 F. Supp. 3d 111 (D.D.C. 2014) ........................................................... 5, 9, 11, 12

*Zevallos v. Obama*,
  793 F.3d 106 (D.C. Cir. 2015) ................................................................... 5, 11, 15

**Statutes**

5 U.S.C. § 555(e) ........................................................................................................ 15

*5 U.S.C. § 702 .......................................................................................................... 14

*50 U.S.C. § 1702(c) .................................................................................................. 6

50 U.S.C. 1702(a)(1)(B) ............................................................................................. 3

**Regulations**

31 C.F.R. § 501.807 ................................................................................................... 6

**Executive Materials**

Blocking Property and Prohibiting Transactions With Persons Who Commit, Threaten To
  Commit, or Support Terrorism,
  Exec. Order No. 13224, 66 Fed. Reg. 49079 (Sept. 23, 2001) ............................. 3, 9

Modernizing Sanctions To Combat Terrorism,
  Exec. Order No. 13886, 84 Fed. Reg. 48041 (Sept. 9, 2019) .................................. 9

**INTRODUCTION**

Plaintiff Wael Muhammad Bazzi was designated a Specially Designated Global Terrorist ("SDGT") for acting for or on behalf of his similarly designated father, Muhammad Bazzi, a major Hizballah financier who provided the terrorist organization millions of dollars. Rather than specifically dispute the numerous instances of illicit collaboration between the two that the Office of Foreign Assets Control ("OFAC") identified, Bazzi argues that he received an inadequate explanation as to why he was designated in violation of the Fifth Amendment's Due Process clause and the Administrative Procedure Act ("APA").

But Bazzi cannot assert a Due Process claim because he fails to identify any property or presence in this country that would allow him to assert such a right, and his brief fails to cite a single case showing otherwise. *See* Pl.'s Mem. of P. & A. at 10-12, ECF Nos. 13-1, 14 ("Br."). He also cites no authority showing that the APA requires anything beyond the unclassified or otherwise not protected portions of the administrative record that he already has. *See id.* at 19-22. The Court should therefore reject his claims out of hand.

In any event, his claims fare no better on the merits. Bazzi's arguments stem from the agency's use of classified information that—for obvious reasons—it did not provide him. But the D.C. Circuit and the International Emergency Economic Powers Act ("IEEPA") allow the reliance on such information. And notwithstanding the use of that classified information, Defendants identified the basis for his designation and supporting facts in a press release, including by identifying specific companies and transactions reflecting Bazzi's illicit collaboration, as well as a timeframe and a location for such collaboration. Moreover, OFAC also published the basis for Bazzi's designation in the Federal Register, and provided him a redacted version of the administrative record underlying his designation. Defendants provided Bazzi ample notice.

Such disclosures provided Bazzi broad opportunity to respond and contest facts supporting his designation. Bazzi's choice to effectively ignore the various instances of collaboration the agency identified, and instead present broad and non-specific challenges to the agency's authority under IEEPA, lack merit. The Court should enter judgment for Defendants and deny Bazzi's motion for summary judgment.

## ARGUMENT

### I.    Bazzi Cannot Assert a Due Process Claim, and Even If He Could, Defendants Provided Him with More Notice Than was Due.

Bazzi maintains that he has received only "conclusory allegations" supporting his designation in violation of the right to adequate post-deprivation notice under the Due Process Clause. Br. at 2; *see also id.* at 9-19. He requests that the Court "direct[] Defendants either to disclose the redacted portions of the administrative record or to provide alternative means by which Bazzi can understand the factual bases for his designation." Br. at 10. But Bazzi lacks sufficient connections to the United States to assert a Due Process violation, and in any event, his claim fails on the merits.

### A. Bazzi Cannot Establish A Connection to the United States Warranting Due Process Protection, and His Argument Lacks Supporting Precedent.

Defendants already explained how Bazzi, a foreign national without property in the United States, cannot assert Due Process rights here. *See* Defs.' Mem. of P. & A. at 10-12, ECF No. 12-1 ("Defs.' Opening Br."). In response, Bazzi fails to cite a single case showing that he may do so, and he does not allege that he has any physical presence or property in the United States. *See* Br. at 10-12. His Fifth Amendment claim therefore fails.

"The Supreme Court has long held that non-resident aliens who have insufficient contacts with the United States are not entitled to Fifth Amendment protections," *Jifry v. FAA*, 370 F.3d

1174, 1182 (D.C. Cir. 2004) (collecting cases), and consistent with that precedent, the D.C. Circuit

has declined to extend the Due Process Clause to foreign terrorist organizations ("FTO") "without

property or presence" in the sovereign territory of the United States, *see, e.g.*, *People's Mojahedin*

*Org. of Iran v. U.S. Dep't of State ("PMOI II")*, 327 F.3d 1238, 1240–41 (D.C. Cir. 2003);

*People's Mojahedin Org. of Iran v. U.S. Dep't of State ("PMOI I"),* 182 F.3d 17, 22 (D.C. Cir.

1999) ("A foreign entity without property or presence in this country has no constitutional rights,

under the due process clause or otherwise.").[1]  These FTO cases "provide guidance" here, *see Kadi*

*v. Geithner*, 42 F. Supp. 3d 1, 25, 28 (D.D.C. 2012), and Bazzi's Due Process claim fails under

this precedent because he resides in Belgium, *see* Am. Compl. ¶ 10, ECF No. 11, and he does not

allege to have any property in the U.S., *see* Br. at 11.[2]

     In response, Bazzi asserts that the D.C. Circuit has not provided "any definitive ruling on

what constitutes 'substantial connections'" allowing a foreign person to assert a Fifth Amendment

---

[1] Quoting *United States v. Verdugo-Urquidez*, 494 U.S. 259, 271 (1990), *PMOI I* went on to explain that "[a]liens receive constitutional protections [only] when they have come within the territory of the United States and developed substantial connections with this country." 182 F.3d at 22.  Subsequently, *Nat'l Council of Resistance of Iran v. U.S. Dep't of State*, read the word "only" in *Verdugo-Urquidez* to "limit[] the application of prior precedent," and that the case did not establish whether individuals with connections to the U.S. but not "substantial" ones are entitled to constitutional protections.  251 F.3d 192, 201-02 (D.C. Cir. 2001) (finding organizations with "overt presence within" building in Washington, DC and a "claim[] [of] an interest in a small" U.S. bank account could assert Due Process rights).  Regardless, Bazzi cannot show any connection here warranting the Due Process protection he seeks.

[2] In the background section of his brief, Bazzi states that "any assets subject to U.S. jurisdiction in which Bazzi maintains an interest are blocked," and that "U.S. persons are generally prohibited from dealing with either" him or his companies.  Br. at 6.  To the extent he tries, he cannot rely on these assertions here because they are not in his amended complaint, *see Jo v. Dist. of Columbia*, 582 F. Supp. 2d 51, 64 (D.D.C. 2008), and in any event, are merely a description of legal consequences of his designation, 50 U.S.C. § 1702(a)(1)(B); Exec. Order No. 13224, § 2, 66 Fed. Reg. 49079 (Sept. 23, 2001), and as such are insufficient to demonstrate any connection to this country, *see Williams v. Lew*, 819 F.3d 466, 472 (D.C. Cir. 2016) (explaining that "conclusory statements and legal conclusions are insufficient to state a plausible basis for standing").

claim.  Br. at 10.  But whatever the quantum of connections required for due process protections to apply, Bazzi can hardly deny that the D.C. Circuit singularly requires as a preliminary step that an entity have *some* connection, *e.g.*, *32 Cty. Sovereignty Comm. v. U.S. Dep't of State*, 292 F.3d 797, 799 (D.C. Cir. 2002); *accord Nat'l Council of Resistance of Iran v. U.S. Dep't of State ("Nat'l Council")*, 251 F.3d 192, 202 (D.C. Cir. 2001) (finding "substantial connections"), and Bazzi can claim neither.  *Cf. Kadi*, 42 F. Supp. 3d at 28-29 (assuming constitutional protection where case involved "arguably a factual dispute" over whether plaintiff had "sufficient connection" before concluding due process requirements were satisfied); *FBME Bank Ltd. v. Lew*, 209 F. Supp. 3d 299, 327 (D.D.C. 2016) (discussing whether plaintiff's allegations of property in the U.S. satisfied "substantial connections" requirement).

Without any supporting case law, Bazzi maintains that he can assert a Due Process claim, arguing that he "has been effectively barred from financial institutions worldwide" in light of the Global Terrorism Sanctions Regulations and Hizballah Financial Sanctions Regulations.  Br. at 11.  But such purported "universal consequences," Br. at 11, are not found in his amended complaint, and thus he cannot rely on them here.  *E.g.*, *Jo v. Dist. of Columbia*, 582 F. Supp. 2d 51, 64 (D.D.C. 2008) ("It is well-established in this district that a plaintiff cannot amend his Complaint in an opposition to a defendant's motion for summary judgment.").  In any event, Bazzi nowhere alleges that any U.S. property is impacted, and the D.C. Circuit requires "property or presence *in this country*," *32 Cty.*, 292 F.3d at 799 (emphasis added).  Such absence only underscores his lack of connection to the United States.  And Bazzi cannot create an exception by arguing that the consequences of his actions have created a "dire" financial situation for him generally.  *See Nat'l Council*, 251 F.3d at 196 (describing impact of FTO designation, including

"[p]erhaps most importantly," forbidding persons within or subject to U.S. jurisdiction from
"'knowingly providing material support or resources,' to the" FTO).

Because Bazzi lacks a connection to the United States triggering Fifth Amendment
protections, he cannot assert a Due Process claim.  He wants the Court to gloss over this issue,
pointing to *Joumaa v. Mnuchin*, No. 17-cv-2780-TJK, 2019 WL 1559453 (D.D.C. Apr. 10, 2019),
*appeal filed*, No. 19-5166 (D.C. Cir. June 6, 2019), which concluded that it could assume
jurisdiction in order to deny a claim on the merits in light of *Jifry*.  But Defendants already
explained why that decision should not control, *see* Defs.' Opening Br. at 12 n.6, and though Bazzi
highlights that *Fares v. Smith*, 249 F. Supp. 3d 115, 122 (D.D.C. 2017), *aff'd*, 901 F.3d 315 (D.C.
Cir. 2018), similarly assumed standing before denying a claim on the merits, *see* Br. at 12, the
district court there also relied on *Jifry*, which did not did not address the Supreme Court's
admonition against assuming jurisdiction, *see Jifry*, 370 F.3d at 1183, and the D.C. Circuit in *Fares*
did not address the issue.  Bazzi's Due Process claim fails here.

**B.  Defendants Have Provided Bazzi Ample Notice, and Thus his Due Process Claim
Fails on the Merits.**

Defendants previously explained how they satisfied any constitutional requirement
because they provided Bazzi a basis to understand his designation and an opportunity offer rebuttal
evidence and arguments.  Defs.' Opening Br. at 13 (citing *Zevallos v. Obama*, 10 F. Supp. 3d 111,
131 (D.D.C. 2014), *aff'd*, 793 F.3d 106 (D.C. Cir. 2015)).  Bazzi claims that such a basis must be
accompanied by an "opportunity to make a meaningful response," Br. at 13, but that is precisely
what he had here.  The agency issued a press release on the day of his designation disclosing facts
underlying his designation, published the basis for his designation in the Federal Register, and
provided him the redacted administrative record underlying his designation.  Defs.' Opening Br.
at 6-8, 13-14.  With this information, Bazzi has a clear path under OFAC's regulations to "seek

administrative reconsideration" of his designation or to assert that the circumstances no longer apply. *See* 31 C.F.R. § 501.807.

Rather than pursuing that opportunity, Bazzi apparently questions the Government's ability to rely upon undisclosed classified information, and asserts that he has not been provided "with sufficient evidence and reasoning" underlying his designation in any event.  Br. at 9.  He is mistaken.

### 1. IEEPA Allows Defendants to Rely on Classified Information that is Not Disclosed to Plaintiff, and Courts Regularly Permit the Practice.

Bazzi claims that the Government's reliance on undisclosed classified information is "presumptively unconstitutional," and reserved for "the most extraordinary circumstances."  Br. at 15 (citation omitted).  This argument is contrary to the statute and binding D.C. Circuit case law.  IEEPA specifically contemplates *ex parte* and *in camera* use of classified information, *see* 50 U.S.C. § 1702(c), and the agency "need not disclose the classified information to be presented *in camera* and *ex parte* to the court" under the Due Process Clause, *Nat'l Council*, 251 F.3d at 208-09; *see also Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 164 (D.C. Cir. 2003) (stating that "'due process require[s] the disclosure of only the unclassified portions of the administrative record'") (quoting *PMOI II*, 327 F.3d at 1242)).  "[A]mple precedent" allows agencies to "use certain sensitive information, without disclosing it, in proceedings imposing targeted financial measures on persons and organizations."  *FBME Bank Ltd. v. Lew*, 125 F. Supp. 3d 109, 118–19 (D.D.C. 2015) (collecting cases); *see also* Defs.' Opening Br. at 15-16 (providing examples).   The inapposite Ninth Circuit case that Bazzi relies upon, *Am.-Arab Anti-Discrimination Comm. v. Reno*, 70 F.3d 1045 (9th Cir. 1995), involved use of classified information in summary proceedings to exclude long-time resident aliens and provides no reason for this Court to depart from the normal course here.  *See Al Haramain Islamic Found., Inc. v. U.S.*

6

*Dep't of Treasury*, 686 F.3d 965, 981 (9th Cir. 2012) (describing *Am.-Arab Anti-Discrimination Comm.*, 70 F.3d at 1052-54).  Indeed, it is not even clear whether the case remains good law in the Ninth Circuit.  *See id.* at 982 & n.8 (questioning whether the passage on which Bazzi relies "remains good law").[3]

Similarly, Bazzi claims that the D.C. Circuit allows the use of undisclosed, classified information only if there is no alternative means of disclosure, Br. at 16, and that the Government must use another procedural safeguard in such situations—"sufficiently specific 'unclassified summaries' that provide the 'who,' 'what,' 'when,' and 'where' of the allegations," Br. at 17 (quoting *Fares v. Smith*, 901 F.3d 315, 319, 324 (D.C. Cir. 2018)).  But Bazzi provides no case holding that there must be no alternative means of disclosure to use classified information,[4] and

---

[3] Defendants already satisfied any "burden," Br. at 15, to not disclose classified information to Bazzi.  *See* Certification of A.R. ¶ 4, ECF No. 10-1 (providing him, redacted as appropriate, "a true, correct, and complete copy of the non-privileged documents that were directly or indirectly considered . . . .").  Bazzi cites inapposite cases involving privilege disputes in civil discovery, *see In re Anthem, Inc. Data Breach Litig.*, 236 F. Supp. 3d 150 (D.D.C. 2017), or a Freedom of Information Act claim, *see Willis v. Nat'l Sec. Agency*, No. 17-cv-2038-KBJ, 2019 WL 1924249 (D.D.C. Apr. 30, 2019).  But this action is reviewed on the administrative record, where it "is far from the norm to require . . . privilege logs."  *FBME Bank Ltd. v. Lew*, 209 F. Supp. 3d at 317; *Fares*, 249 F. Supp. 3d at 129 n.3.  Bazzi also cites *Sulemane v. Mnuchin*, No. 16-cv-1822-TJK, 2019 WL 77428, *4-*5 & n.8 (D.D.C. Jan. 2, 2019), presumably because that court ordered an explanation for the applicability of the law enforcement privilege before concluding that it was properly invoked.  But Bazzi does not challenge that privilege, *see* Defs.' Opening Br. at 17 n.10; Br. at 16 n.2 (Bazzi does not "necessarily request[]" a privilege log), and to date no party has relied upon that limited information here to further their arguments.  *Sulemane* did not order such an explanation with respect to classified information before ruling in the agency's favor.  *See* 2019 WL 77428, at *4-5.

[4] Bazzi's string cite to support this assertion, *see* Br. at 16, undermines his claim.  *See Nat'l Council*, 251 F.3d at 208 (notice "need not disclose the classified information to be presented *in camera* and *ex parte* to the court under the statute"); *PMOI II,* 327 F.3d at 1242 (rejecting argument that opportunity to challenge was not meaningful, explaining that "due process required the disclosure of only the unclassified portions of the administrative record"); *Holy Land*, 333 F.3d at 164 (similar); *accord Fares*, 901 F.3d at 324-26 (permitting reliance on unclassified summaries where plaintiffs argued that defendants could not rely on undisclosed information in the administrative record at all).

the D.C. Circuit has not imposed the "procedural safeguard[]" that he describes.  Br. at 17.  To the contrary, the D.C. Circuit in *Jifry*, for example, held that the Government satisfied the notice requirements of due process by informing foreign national pilots that their airmen certificates had been revoked based on TSA's determination that they were a "security threat," even though the notice of that revocation "did not include the factual basis for" that determination, "which was based on classified information," and plaintiffs argued that "without knowledge of the specific evidence on which TSA relied, they [were] unable to defend against the charge that they are security risks."  370 F.3d at 1178, 1184 (noting that D.C. Circuit "rejected the same argument" that an agency is not permitted to rely on undisclosed classified information with respect to the designations of FTOs in *Nat'l Council*, 251 F.3d at 208 and *PMOI II*, 327 F.3d at 1242-43).  And in *Holy Land*, the D.C. Circuit held that due process permitted the government, pursuant to IEEPA, to rely on classified information submitted *ex parte* and *in camera* to support the designation of a domestic entity as a SDGT, finding the argument "that due process prevents its designation based upon classified information to which it has not had access is of no avail."  333 F.3d at 164.[5]

---

[5] Bazzi points (again) to *Al Haramain Islamic Found., Inc.*, 686 F.3d at 987, where the Ninth Circuit stated that it "appear[ed]" that the plaintiffs in *Holy Land* did not raise the issue of whether due process requires a statement of reasons and the notice sufficiently stated the reasons for the investigation.  *Al Haramain*, 686 F.3d at 988.  But *Holy Land* does not say as much, and *Al Haramain* acknowledged that *Holy Land* (and *National Council*) "may suggest that a statement of reasons is not required by due process," before explaining that it was bound to follow a prior case's holding even if the D.C. Circuit cases were in conflict.  686 F.3d at 988.

Also, Bazzi muses that a classified record "essential to upholding the action" may present Due Process concerns.  Br. at 14 (citing *People's Mojahedin Org. of Iran v. U.S. Dep't of State ("PMOI III")*, 613 F.3d 220, 231 (D.C. Cir. 2010) (per curiam).  But Bazzi has been provided ample unclassified information that adequately supports his designation independent of any classified information, *see infra* Part III, and in any event, binding D.C. Circuit precedent has rejected due process challenges where administrative decisions relied on classified material, *see PMOI III*, 613 F.3d at 231-32 & n.2 (Henderson, J., concurring).

Although Bazzi tries to root his requested "procedural safeguard[]" in *Fares v. Smith*, 901 F.3d 315 (D.C. Cir. 2018), Defendants have already explained how that Court imposed no such requirement, *see* Defs.' Opening Br. at 15 n.9.  Further, Bazzi is wrong that any notice must take a prescribed form, as Due Process "requires only that process which is due *under the circumstances of the case*."  *PMOI II*, 327 F.3d at 1242 (emphasis added); *see also*, *e.g.*, *Al Haramain*, 686 F.3d at 983 (acknowledging that an unclassified summary may not always be possible).  In short, while "courts have recognized that unclassified summaries of classified information on which an agency relied may be helpful to litigants, they are not required."  *FBME Bank*, 125 F. Supp. 3d at 119 n.2. And such a summary would serve no utility here, as the notice Bazzi received more than satisfies due process as explained below.

**2. Bazzi's Complaints with the Extensive Notice Defendants Provided Do Not Establish a Due Process Violation.**

Even though the agency provided Bazzi the basis for his designation and supporting facts, Bazzi insists that he has not been provided with sufficient evidence or reasoning for his designation.  But due process requires only that OFAC provide Bazzi with "a basis from which to understand his designation, and thereby offer rebuttal arguments and evidence in response," *Zevallos*, 10 F. Supp. 3d at 131; *see also Fares v. Smith*, 249 F. Supp. 3d 115, 127 (D.D.C. 2017), *aff'd*, 901 F.3d 315 (D.C. Cir. 2018).  Defendants easily met that standard.

A brief summary of the notice that Defendants provided refutes Bazzi's assertion to the contrary.  On the day of his designation, the agency's press release announced the basis for Bazzi's designation.  *See* A.R. at 2 ("for acting for or on behalf of his father and Hizballah financier, Mohammad Bazzi").[6]  OFAC subsequently confirmed that basis, both through a Federal Register

---

[6] Although not relevant here, OFAC re-designated Bazzi's father in November 2019 under Executive Order 13224, as amended by Executive Order 13886, 84 Fed. Reg. 48041 (Sept. 9, 2019), and the briefing schedule in his father's lawsuit envisions that dispositive motions will be

Notice, A.R. 15, and the administrative record that it provided him, A.R. 19.  Moreover, the press release explained the agency's rationale, A.R. 5 (Mohammad Bazzi "has been able to conduct business through" his son, Wael Bazzi); and provided numerous supporting facts, including by specifying companies involved, *id.* (coordinated with father to change Global Trading Group NV's name and likely obscure father's involvement); *id.* (likely established Voltra Transcor Energy account in connection with father's efforts to move money and circumvent sanctions); identifying transactions involving the two, *id.* ("formed a petroleum company to maintain his father's access to the oil industry"); *id.* (helped father and Lebanon-based associate facilitate payments); *id.* (relied upon to bid on Gambian government contracts); highlighting a timeframe (witting of father's involvement in illicit activity "[a]s of at least early 2018"); and disclosing a location, *id.* ("turned to his son . . . to continue doing business in the Gambia").

Notwithstanding all of the above, Bazzi complains that the Government did not "adequately identify those activities" and reflects "nothing more than caveated and conclusory characterizations of activities."  Br. at 17.  But the disclosures provide Bazzi more than sufficient opportunity to challenge his designation beyond simply "a general" or "blanket denials."  *Id.* at 18.  For example, he could try to show—through an audit or otherwise—that he did not establish an account for Voltra Transcor Energy in connection with his father's attempt to move money and circumvent sanctions.  A.R. 5-6.  He could try to show that he did not form a petroleum company to maintain his father's access to the oil industry.  *See id.* at 5.[7]  Or he could attempt to show that

---

ripe for decision in April 2020.  *See* Min. Order, *Bazzi v. Gacki*, 1:19-cv-484-RDM (D.D.C. Dec. 12, 2019).

[7] Bazzi also questions the relevance of OFAC's finding that Bazzi's father planned to submit his son to fill a Lebanese Consular position because he could exert his influence over him.  Br. at 18. But Bazzi declined to challenge the sufficiency of the evidence underlying his designation.  *See generally* Am. Compl.; Br. at 7.  In any event, he does not dispute that his father planned to exert

any Gambian government contracts with which he was involved had no connection to his father. *Id*. at 5.

Nothing beyond Defendants' disclosures was needed to provide Bazzi a basis from which to understand his designation, *see Zevallos*, 10 F. Supp. 3d at 131, and he is not entitled to dictate the specifics of his notice, *see Jifry*, 370 F.3d at 1184; *Fares*, 249 F. Supp. 3d at 127-28 (rejecting argument that plaintiffs needed "more specific information regarding the transactions that OFAC believes were used to facilitate money laundering"); *Kiareldeen v. Ashcroft*, 273 F.3d 542, 548 (3d Cir. 2001) ("summaries were not highly fact-specific [ to] ensur[e] that neither . . . sources nor national security [are] compromised"). Bazzi's notice was not "too conclusory." *Joumaa v. Mnuchin*, No. 17-cv-2780-TJK, 2019 WL 1559453, at *10 (D.D.C. Apr. 10, 2019) (rejecting similar argument where, as here, notice provided details "about his alleged [illicit] activities," including "entities," "types" of support, "time frame[], and location[] involved" and his "associations with [an]other" blocked person).[8]

---

his influence in this manner, *see* Br. at 18, and APA review does not require the Court to evaluate each discrete piece of evidence in isolation, but rather whether "[a]ll this evidence together provides adequate basis." *Zevallos*, 793 F.3d at 114. Indeed, the national security and foreign policy implications of OFAC's designations only confirm the need to avoid such piecemeal review. *Cf. Holder v. Humanitarian Law Project*, 561 U.S. 1, 34-35 (2010) ("[N]ational security and foreign policy concerns arise in connection with efforts to confront evolving threats in an area where information can be difficult to obtain and the impact of certain conduct difficult to assess. . . . In this context, conclusions must often be based on informed judgment rather than concrete evidence, and that reality affects what we may reasonably insist on from the Government.").

[8] Bazzi references the length of the unclassified summaries in *Fares*, Br. at 19, but the provision of summaries to the multiple plaintiffs in that case in no way casts doubt on the constitutionality of the notice here. *See Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("[D]ue process is flexible and calls for such procedural protections as the particular situation demands."); *see also* Certification of A.R. ¶ 4 (certifying that Bazzi received, redacted as appropriate, "a true, correct, and complete copy of the non-privileged documents that were directly or indirectly considered . . . ."). Moreover, *Fares* involved a designation under the Foreign Narcotics Kingpin Designation Act that relied on law enforcement sensitive information, 901 F.3d at 320, and disclosure of the classified information underlying the designation here would harm the national security of the

And despite his repeated references, this case bears no resemblance to the out-of-circuit decisions in *KindHearts for Charitable Humanitarian Development Inc. v. Geithner*, 647 F. Supp. 2d 857 (N.D. Ohio 2009), and *Al Haramain*.  As an initial matter, those cases—unlike this one—involved domestic entities, and thus implicated due process protections that do not apply here.  *See Al Haramain*, 686 F.3d at 979; *KindHearts*, 647 F. Supp. 2d at 864.  In any event, *KindHearts* concluded that the summaries there "provided no explanation of the specific charges [OFAC] was considering against KindHearts or why it thought the evidence supported a potential designation," and left the petitioner "largely uninformed about the basis for the government's actions," *KindHearts*, 647 F. Supp. 2d at 868, 904; *Zevallos*, 10 F. Supp. 3d at 130-31 (distinguishing *KindHeats*); *see also Kadi*, 42 F. Supp. 3d at 29 n.16 (distinguishing *KindHearts*, noting that the notice there included listing designation criteria and "numerous delays, failures to respond, and misplacing of plaintiff's submissions without any further explanation").  Similarly, *Al Haramain* involved a "significantly untimely and incomplete notice" that provided "only one of three reasons for [the agency's] investigation and designation."  686 F.3d at 986.  Bazzi is thus "unlike the plaintiffs in *Al Haramain* and *KindHearts*, who were left in the dark as to the reasons for their designations."  *Fares*, 249 F. Supp. 3d at 127.

In sum, even if Bazzi could assert a Due Process claim (and he cannot), that claim fails on the merits.

## II.     Bazzi Confirms that his APA Claim Lacks Any Statutory Foundation and is Without Precedent.

Bazzi also tries to assert his Due Process claim under the APA, arguing that he "is challenging the adequacy of notice under the broader due process requirements imposed on OFAC

---

United States, *see id.* at 324 ("Forcing the executive branch to disclose information that it has validly classified would compel a breach in the security which that branch is charged to protect.") (quotation marks and citations omitted).

under the APA."  Br. at 22.   According to Bazzi, "traditional concepts of due process are incorporated into administrative law," and OFAC's "lack of procedural safeguards and regulations in the designation process" under the APA mean that "the requirements of due process apply."  Br. at 20-21.

But Bazzi has no Due Process rights, *see supra* Part I, and the APA does not independently confer constitutional rights to individuals who otherwise lack such protection.   Rather, it allows those with constitutional rights to argue that an action is unlawful by alleging that those rights were violated by an agency's action.  Bazzi's cited cases indicate as much.  *See, e.g.*, *Al Haramain Islamic Found., Inc. v. U.S. Dep't of Treasury*, 585 F. Supp. 2d 1233, 1243, 1253-54 (D. Or. 2008) (domestic entity); *Howmet Corp. v. EPA*, 656 F. Supp. 2d 167, 169 (D.D.C. 2009) (same), *aff'd sub nom. Howmet Corp. v. EPA*, 614 F.3d 544 (D.C. Cir. 2010); *Hill v. U.S. Parole Comm'n*, No. CV 16-1476 (JEB), 2017 WL 2414446, at *1 (D.D.C. June 2, 2017) (prisoner seeking parole from U.S. Parole Commission).  Bazzi fails to cite a single case where the APA conferred constitutional rights to a litigant who otherwise lacks such rights.

Instead, Bazzi cites a number of cases and asserts that foreign persons or entities have established standing and can sue under the APA.  *See* Br. at 19-20.  But that confuses the issue, and the cases that he cites are plainly not relevant to the question of whether the APA provides him constitutional protections that he otherwise lacks.  *See Disconto Gesellschaft v. Umbreit*, 208 U.S. 570, 578-80 (1908) (state court did not violate due process where exercised comity in a way that declined to favor foreign creditor over local creditor); *Cardenas v. Smith*, 733 F.2d 909, 913, 915-17 (D.C. Cir. 1984) (concluding that plaintiff "satisfied the Article III injury in fact requirement" but offering "no opinion" as to whether she is an "intended beneficiar[y] of the relevant constitutional guarantees" who can establish standing); *Constructores Civiles de*

*Centroamerica, S. A. (CONCICA) v. Hannah*, 459 F.2d 1183, 1191 (D.C. Cir. 1972) (concluding

that plaintiff, "despite its status as a non-resident alien corporation, has standing to maintain suit");

*Silva v. Bell*, 605 F.2d 978, 985 & n.12 (7th Cir. 1979) (explaining that class had Article III

standing where some class members were in the United States, and striking district court's due

process holding as "unnecessary" in light of its holding that the policy violated the Immigration

and Nationality Act); *FBME Bank Ltd.*, 209 F. Supp. 3d at 326 (concluding that foreign entity

plaintiff "likely does not" enjoy due process right, but even if it did, it was "not entitled to any

additional procedural protections other than those it was provided during the rulemaking process

as delineated by" statute).

Regardless of what other claims Bazzi may be able to assert under the APA, in order to

press a claim for inadequate notice under the APA, he must show that the notice he received

violates a violation of his legal rights.  *See* 5 U.S.C. § 702 ("A person suffering *legal* wrong

because of agency action, or adversely affected or aggrieved by agency action *within the meaning*

*of a relevant statute*, is entitled to judicial review thereof.") (emphases added).  Although he tries

to rely on alleged Due Process rights to establish his APA claim, *see* Br. at 22, he cannot do so

because he has no such rights and, even if he did, they were satisfied by the notice that he received.

*See supra* Part I.  His claim fails even if the Court were to construe his claim as asserting an

entitlement to notice under the APA alone or otherwise not implicating Due Process.

Unable to show an entitlement to anything beyond the administrative record, *see* Defs.'

Opening Br. at 17, Bazzi cannot establish that the notice he received violates the APA.  Whatever

level of notice might be required by the APA was plainly satisfied here in light of (i) the April 24,

2019 press release, A.R. 1-7, (ii) the May 16, 2019 Federal Register notice, A.R. 15-16, and (iii)

the redacted administrative record.  *See supra* Part I.  The adequacy of this notice is underscored

by Bazzi's attempt to distinguish *Sulemane v. Mnuchin*, which he notes involved 5 U.S.C. § 555(e)

because the designee there, unlike him, submitted a delisting petition.  Br. at 22.  This only

confirms Bazzi cannot avail himself of that "notice provision" in the APA, *Sulemane v. Mnuchin*,

No. 16-cv-1822-TJK, 2019 WL 77428, at *7 (D.D.C. Jan. 2, 2019), and his argument lacks any

other statutory provision entitling him to anything beyond what he has already received.

Bazzi's APA claim fails.

### III.    Bazzi Cannot Show Entitlement to Relief Because Ample Evidence Supports His Designation as a SDGT.

Because ample evidence supports Bazzi's designation, and Bazzi did not even

acknowledge, let alone specifically dispute, a number of instances that OFAC identified where he

illicitly collaborated with his father, Defendants previously explained that even if there were some

error with the notice that he received (and there is not), any such error would be harmless.  *See*

Defs.' Opening Br. at 18 (citing *Al Haramain*, 686 F.3d at 990).

Bazzi argues that *Al Haramain* is inapposite because plaintiffs there challenged their

designation, whereas he does not.  Br. at 23.  But that counsels in favor of applying the harmless

error rule here because his designation should stand notwithstanding the Court's findings regarding

the notice received.  Moreover, "OFAC has provided ample opportunity" for him to "present

rebuttal evidence and to thereby supplement the administrative record," *Fares*, 249 F. Supp. 3d at

125, and though he has failed to do so, he "remains free now to continue contesting his designation

by filing new delisting requests, meaning that he can make any new arguments that occur to him."

*Joumaa*, 2019 WL 1559453, at *11 n.15 (quoting *Zevallos*, 793 F.3d at 117); *see also, e.g.*, *id.* at

*3 (explaining that plaintiff's petition for delisting "led to a lengthy dialogue with OFAC" and he

"submitted information about his relationships with 55 individuals and 95 entities on the SDN list"

and "extensive documentation").  Thus, in the event the Court concludes that Plaintiff received

adequate notice, as it should, Plaintiff may still seek reconsideration of OFAC's substantive decision to designate him.

Bazzi also asserts that Defendants made a "concession" that "confirms the inadequacy of the notice" because "they acknowledge that they are critically relying on undisclosed classified material." Br. at 23 (citations omitted). Not so. Defendants plainly stated that the "*unclassified administrative record makes clear*" that ample evidence supports his designation. Defs.' Opening Br. at 18 (emphasis added); *cf. Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 734 (D.C. Cir. 2007) ("We acknowledge that the unclassified record evidence is not overwhelming, but we reiterate that our review—in an area at the intersection of national security, foreign policy, and administrative law—is extremely deferential."). That alone provides the Court with enough to reject Bazzi's Due Process claim. *See People's Mojahedin Org. of Iran v. U.S. Dep't of State ("PMOI III")*, 613 F.3d 220, 230-31 (D.C. Cir. 2010) (per curiam) (determining that providing FTO unclassified portions of record satisfies due process); *Chai v. U.S. Dep't of State*, 466 F.3d 125, 129 (D.C. Cir. 2006) (declining to resolve due process claim because "we can uphold the designations based solely upon the unclassified portion of the administrative record"). The fact that "the Court's *ex parte*, *in camera* review of the classified record will confirm" that ample evidence supports Bazzi's designation, Defs.' Opening Br. at 18, is hardly surprising, and in no way a concession of constitutional error. And in any event, the D.C. Circuit has rejected due process challenges where administrative decisions relied on classified material, *see PMOI III*, 613 F.3d at 231-32 & n.2 (Henderson, J., concurring), including when the Government relied *exclusively* on such information as the factual basis for its decision, *see Jifry*, 370 F.3d at 1184.

No error occurred here, but even if the Court concluded otherwise, it would be harmless and therefore insufficient to warrant the relief Bazzi seeks.

16

## **CONCLUSION**

The Court should enter judgment for Defendants and deny Bazzi's motion for summary

judgment.

Dated January 7, 2020                               Respectfully submitted,

                                                    JOSEPH H. HUNT
                                                    Assistant Attorney General

                                                    DIANE KELLEHER
                                                    Assistant Branch Director

                                                    */s/ Kevin Snell*
                                                    KEVIN SNELL
                                                    Trial Attorney
                                                    United States Department of Justice
                                                    Civil Division, Federal Programs Branch
                                                    1100 L Street, N.W.
                                                    Washington, DC 20005
                                                    Tel: (202) 305-0924
                                                    Fax: (202) 616-8460
                                                    Email:  Kevin.Snell@usdoj.gov