**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|   |   |
|---|---|
| WAEL MUHAMMAD BAZZI | ) |
| | ) |
| *Plaintiff,* | ) |
| | )   Civil Action No. 1:19-cv-01940 (TNM) |
| v. | ) |
| | ) |
| ANDREA M. GACKI, *et al.* | ) |
| | ) |
| *Defendants.* | ) |
_____ )

## PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

DISCUSSION .......................................................................................................................3

     I.     Defendants Failed to Provide Bazzi with Adequate Notice as to the Reasons for his Designation Under E.O. 13224 in Violation of the Due Process Clause of the Fifth Amendment to the U.S. Constitution ............................................................3

         A.  Bazzi Can Assert a Fifth Amendment Due Process Claim ..............................3

         B.  Defendants Violated the Constitution's Post-Deprivation Due Process Requirement by Failing to Provide Adequate Notice to Bazzi ........................7

     II.    Defendants Failed to Provide Bazzi with Adequate Notice as to the Reasons for his Designation Under E.O. 13224 in Violation of the Administrative Procedure Act................................................................................................................. 12

     III.   Bazzi is Due Sufficient Notice to Enable him to Challenge the Substance of OFAC's Decision to Designate him Through its Administrative Reconsideration Process ............................................................................................................ 14

CONCLUSION.................................................................................................................. 15

## TABLE OF AUTHORITIES

**CASES**                                                             **PAGE(S)**

*Al Haramain Islamic Found., Inc. v. U.S. Dep't of the Treasury*,
585 F. Supp. 2d 1233 (D. Or. 2008) .............................................................................. 13

\*Al Haramain Islamic Found., Inc. v. U.S. Dep't of the Treasury*,
686 F.3d 965 (9th Cir. 2012) ................................................................................8, 9, 10

*American-Arab Anti-Discrimination v. Reno*,
70 F.3d 1045 (9th Cir. 1995) .....................................................................................8, 9

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007).................................................................................................... 5

*Cardenas v. Smith*,
733 F.2d 909 (D.C. Cir. 1984) .................................................................................... 13

*Constructores Civiles de Centroamerica, S.A. v. Hannah*,
459 F.2d 1183 (D.C. Cir. 1972) .................................................................................. 12

*Disconto Gesellschaft v. Umbreit*,
208 U.S. 570 (1908)................................................................................................... 13

\*Fares v. Smith*,
249 F. Supp. 3d 115 (D.D.C. 2017) .....................................................................6, 8, 15

\*Fares v. Smith*,
901 F.3d 315 (D.C. Cir. 2018) .........................................................................2, 8, 10, 14

*FBME Bank Ltd. v. Lew*,
209 F. Supp. 3d 299 (D.D.C. 2016) .......................................................................3, 12

*Gete v. I.N.S.*,
121 F.3d 1285 (9th Cir. 1997) .......................................................................................7

*Hejeij v. Gacki, et al.*,
No. 19-1921 (TFH) (D.D.C. Nov. 8, 2019) ................................................................. 13

*Holy Land Found. v. Ashcroft*,
333 F.3d 156 (D.C. Cir. 2003) .......................................................................................8

*In re Anthem, Inc. Data Breach Litig.*,
236 F. Supp. 3d 150 (D.D.C. 2017) ...............................................................................9

*In re Sealed Case*,
   737 F.2d 94 (D.C. Cir. 1984) ......................................................................................9

*Jifry v. F.A.A*,
   370 F.3d 1174 (D.C. Cir. 2004) ..................................................................................5

*\*Joumaa v. Mnuchin*,
   No. 17-2780 (TJK), 2019 WL 1559453, (D.D.C. Apr. 10, 2019) ...........................6, 7, 11

*\*Kadi v. Geithner*,
   42 F. Supp. 3d 1 (D.D.C. 2012) ...........................................................................4, 5, 6, 7

*Kiareldeen v. Ashcroft*,
   273 F.3d 542 (3d Cir. 2001) .................................................................................2, 10

*\*KindHearts for Charitable Humanitarian Dev. v. Geithner*,
   647 F. Supp. 2d 857 (N.D. Ohio 2009) ................................................................7, 8, 11

*Mathews v. Eldridge*,
   424 U.S. 319 (1976) .................................................................................................7

*\*Nat'l Council of Resistance v. Dep't. of St. ("NCORI")*,
   251 F.3d 192 (D.C. Cir. 2001) ...............................................................................3, 6, 8

*People's Mojahedin Org. of Iran v. U.S. Department of State*,
   613 F.3d 220 (D.C. Cir. 2010) ...............................................................................8, 15

*Rafeedie v. I.N.S.*,
   880 F.2d 506 (D.C. Cir. 1989) ...................................................................................10

*Silva v. Bell*,
   605 F.2d 978 (7th Cir. 1979) ....................................................................................13

*Sulemane v. Mnuchin*,
   No. 16-1822 (TJK), 2019 WL 77428, (D.D.C. Jan. 2, 2019) ...........................................9

*United States v. Lopez Bello*,
   1:19-cr-00144-AKH (S.D.N.Y. 2019) ..........................................................................5

*United States v. Tajideen*,
   1:17-cr-00046-RBW (D.D.C. 2017) .............................................................................5

*United States v. Verdugo-Urquidez*,
   494 U.S. 259 (1990) ..................................................................................................6

*Zevallos v. Obama*,
    793 F.3d 106 (D.C. Cir. 2015) ......................................................................................... 15

**STATUTES**

5 U.S.C. § 702 ............................................................................................................................ 12

5 U.S.C. § 706 ............................................................................................................................ 14

**REGULATIONS**

31 C.F.R. §501.807 ...................................................................................................................... 7

## INTRODUCTION

In the instant matter, Plaintiff Wael Muhammad Bazzi ("Bazzi") challenges the insufficient notice that he has received concerning his designation as a Specially Designated Global Terrorist ("SDGT") by the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC"). In order to challenge his designation through OFAC's administrative delisting process, and demonstrate that he is not acting for or on behalf of Mohammad Ibrahim Bazzi, his similarly designated father, Bazzi first needs adequate notice of OFAC's reasons for determining that he meets the criteria for designation under E.O. 13224. Bazzi therefore is not arguing insufficient notice *rather than* challenging OFAC's findings, but because Defendants have not provided him adequate notice, he is forced to first understand the full reasons of his designation as a necessary predicate to meaningfully challenge that designation through OFAC's administrative reconsideration process.

Bazzi does not question, as Defendants claim, the Government's ability to rely upon undisclosed classified information. Def.'s Mem. in Opp. to Pl.'s Mot. for Sum. J. and Reply in Supp. of Def.'s Mot. to Dismiss or, in the Alternative, for Summ. J. ("Def.'s Mem.") at 6, ECF Nos. 15, 16. However, even assuming *arguendo* Defendants are correct that they are not required to provide anything beyond the unclassified or otherwise not protected portions of the administrative record, it still would not mean that the information provided inherently constitutes adequate notice. *See id* at 14-15. The question instead is whether the substance of the information conveyed in fact provides adequate notice, regardless of its form. By Defendants' logic, if an entire administrative record were classified, then nothing would need to be provided to a designated party. This position is untenable as Defendants could then effectively withhold all the reasons for

1

a party's designation based on their own classification determinations, including unclassified information classified by compilation.

Simply put, irrespective of whether there is or is not any obligation to summarize or disclose any classified information, Defendants must provide to designated parties the full reasons for their designation, and those reasons must include the "'who,' 'what,' 'when,' and 'where' of the allegations'" against them in some form. *See Fares v. Smith*, 901 F.3d 315, 324 (D.C. Cir. 2018); *see also Kiareldeen v. Ashcroft*, 273 F.3d 542, 548 (3d Cir. 2001). Nonetheless, and despite Defendants' repeated insistence to the contrary, their disclosures only restate conclusory allegations that leave Bazzi with critical unaddressed questions the answers to which are necessary to give him the ability to meaningfully engage in OFAC's administrative delisting process.

Accordingly, OFAC is preventing Bazzi from challenging most of its findings in support of his designation, as all factual support for Defendants' determination that Bazzi acts for or on behalf of his father is redacted from the disclosed evidentiary memorandum, and no unclassified summary of that information has been provided. *See* Admin. Record ("A.R.") 19-22. Those redactions, as well as OFAC's failure to provide adequate alternative means by which to ensure Bazzi has a complete understanding of the reasons for his designation, preclude Bazzi from effectively and substantively challenging his designation through OFAC's administrative delisting process. OFAC has thus failed to provide sufficient notice to Bazzi of the basis for his designation consistent with its obligations under the Fifth Amendment to the U.S. Constitution and the Administrative Procedure Act ("APA").

This lawsuit therefore seeks disclosures that will provide Bazzi adequate notice as to the reasons for his designation, and thus an opportunity to meaningfully participate in OFAC's

administrative delisting process. Accordingly, Defendants' Motion for Summary Judgement should be denied, and summary judgment should be granted in favor of Bazzi.

## DISCUSSION

### I. DEFENDANTS FAILED TO PROVIDE BAZZI WITH ADEQUATE NOTICE AS TO THE REASONS FOR HIS DESIGNATION UNDER E.O. 13224 IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE U.S. CONSTITUTION

By failing to provide Bazzi with sufficient notice of the basis of his designation under E.O. 13224, Defendants have violated the Fifth Amendment Due Process Clause. Accordingly, Bazzi respectfully requests that the Court grant him summary judgment and provide means by which Bazzi can understand the factual basis for his designation, so that he can have a meaningful opportunity to respond to OFAC's designation.

### A. Bazzi Can Assert a Fifth Amendment Due Process Claim

Defendants attempt to distinguish the D.C. Circuit's discussion of "substantial connections" issues and continue to draw comparisons to judicial challenges of designations of Foreign Terrorist Organization ("FTOs"). Defs. Mem. at 2-5, ECF Nos. 15, 16. Their cited cases, however, do not include any definitive ruling on what constitutes sufficient connections of a foreign person subject to U.S. economic sanctions. *See Nat'l Council of Resistance v. Dep't. of St. ("NCORI"),* 251 F.3d 192, 202 (D.C. Cir. 2001) ("In any event, we are not undertaking to determine, as a general matter, how 'substantial' an alien's connections with this country must be to merit the protections of the Due Process Clause or any other part of the Constitution."); *see also FBME Bank Ltd. v. Lew*, 209 F. Supp. 3d 299, 327 (D.D.C. 2016) (noting that caselaw is surprisingly sparse on what quantum of contacts are sufficient under *Verdugo-Urquidez*).

As Defendants implicitly acknowledge, courts have not decided the extent of contact with the United States that a foreign person sanctioned by OFAC must have in order to claim due

process protections, nor have courts set any specific standard. Defs. Mem. at 3-5, ECF Nos. 15, 16; *see also Kadi v. Geithner,* 42 F. Supp. 3d 1, 25 (D.D.C. 2012) ("The D.C. Circuit has not explicitly addressed what criteria the Court should apply in considering whether a foreign national residing outside the United States can satisfy the 'substantial connection' test to raise rights under the U.S. Constitution related to the blocking or freezing of his assets. Nor has the D.C. Circuit addressed whether such rights turn on the presence of property in the United States, or whether [Plaintiff] can raise certain constitutional claims, but not others.")

Defendants try to suggest that Bazzi cannot even assert the factual consequences of their actions against him. Defs. Mem. at 3 n.2, 4, ECF Nos. 15, 16 (suggesting that his assertions are conclusory statements or legal conclusions and are not in his Amended Complaint). However, Defendants' own press release announcing Bazzi's designation explain these same factual consequences: "[a]s a result of today's action, all property and interests in property of these persons, and of any entities that are owned, directly or indirectly, 50 percent or more by the designated persons, that are in the United States or in the possession or control of U.S. persons are blocked and must be reported to OFAC. OFAC's regulations generally prohibit all dealings by U.S. persons or within (or transiting) the United States that involve any property or interests in property of blocked or designated persons." A.R. 3. Bazzi's Amended Complaint plainly stated that Defendants were responsible for that action designating him, and the factual consequences of his designation then clearly stem from Defendants' action. *See* Am. Compl., ¶ 2. As a direct result of that action, Bazzi has been effectively barred from engaging in transactions worldwide where any U.S. nexus to that transaction exists. Bazzi is also subject to criminal liability in the United States if he causes a U.S. person to violate sanctions—an obligation created by Defendants'

designation action.[1] *See Jifry v. F.A.A.*, 370 F.3d 1174, 1182 (D.C. Cir. 2004) (finding that under *Verdugo-Urquidez* constitutional protections may be accorded where aliens have come within the United States and established substantial connections *or* accepted some societal obligations).

Further, although Defendants contend that the consequences of his designation are insufficient to demonstrate any connection to this country, Defs. Mem. at 3 n.2, those facts actually provide "plausible grounds" under which "to infer" that he has property subject to blocking, "rais[ing] the reasonable expectation that discovery will reveal evidence" of the blocked property. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (stating that a complaint "may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely'"). All that is currently required in this matter is that Bazzi set forth facts that "raise a right to relief above the speculative level." *Id.* at 555.

The blocking of Bazzi's property within U.S. jurisdiction, as a factual consequence of his designation, gives rise therefore to a Fifth Amendment due process claim regarding Defendants' failure to provide sufficient notice for their action. This Court—in reviewing the relevant case law—considered "the presence of property" as the "benchmark for satisfying the 'substantial connections' test, and whether a party has the ability to raise constitutional claims, at least with respect to that property." *Kadi*, 42 F. Supp. 3d at 26. Accepting as true for purposes of the pending motion that all his property and interests in property that are in the United States or in the possession or control of U.S. persons are blocked, Bazzi has satisfied this standard and can assert constitutional rights.

---

[1] A number of foreign aliens have been charged or convicted for criminal violations arising from causing U.S. persons to violate the U.S. sanctions prohibitions imposed upon the foreign alien. *See e.g.*, *United States v. Tajideen*, 1:17-cr-00046-RBW, Indictment, DN 1 (D.D.C. 2017); *United States v. Lopez Bello*, 1:19-cr-00144-AKH, Superseding Indictment, DN 15 (S.D.N.Y. 2019).

As the D.C. Circuit expressed in *Nat'l Council of Resistance of Iran v. U.S. Dep't of State*, nothing in *Verdugo-Urquidez* "purports to establish whether aliens who have entered the territory of the United States and developed connections with this country but not substantial ones are entitled to constitutional protections." *Nat'l Council of Resistance*, 251 F.3d at 202. While *Verdugo-Urquidez* clarifies that foreign nationals who "have come within the territory of the United States and developed substantial connections to this country" are entitled to constitutional protection, it does not establish a bar to protections for those beneath that threshold. *Id.; see also United States v. Verdugo-Urquidez*, 494 U.S. 259, 271 (1990). As seen in *Kadi*, the mere presence of property in the United States may well provide certain constitutional protections. *Kadi*, 42 F. Supp. 3d at 26. Moreover, no court has tested whether a foreign national whose property is subject to blocking merits constitutional protection with respect to that property subject to blocking. *See, e.g., Fares v. Smith*, 249 F. Supp. 3d 115, 122 (D.D.C. 2017) ("[T]he Court . . . does not reach the antecedent question of whether Plaintiffs are entitled to the protections of the Due Process clause."); *Kadi*, 42 F. Supp. 3d at 28 (holding that "the issue of standing need not be conclusively resolved . . . if the jurisdictional facts 'are inextricably intertwined with the merits of the case'").

Finally, Defendants suggest that Bazzi "wants the Court to gloss over this issue, pointing to *Joumaa v. Mnuchin*, No. 17-cv-2780-TJK, 2019 WL 1559453 (D.D.C. Apr. 10, 2019), appeal filed, No. 19-5166 (D.C. Cir. June 6, 2019), which concluded that it could assume jurisdiction." Defs. Mem. at 5, ECF Nos. 15, 16. Defendants say that they already explained why that decision should not control. *Id*. In that matter, however, the Court correctly declined to dismiss a claim, consistent with the conclusions of the D.C. Circuit, noting that "the question of whether a foreign plaintiff may bring a Fifth Amendment due process claim is not a jurisdictional question; if it were, the Circuit's approach in *Jifry* would be inconsistent with the Supreme Court's admonition that a

court may not assume jurisdiction for purposes of resolving the merits of a claim." *Joumaa v. Mnuchin*, No. 17-cv-2780, 2019 WL 1559453, at 20 n.13.

This is all in sharp contrast to Defendants' claim that "[w]ithout any supporting case law, Bazzi maintains that he can assert a Due Process claim . . . ." Defs. Mem. at 4. Moreover, Defendants themselves have not cited any authority holding that a foreign person who—as result of legal action by the United States Government—has been subjected to such consequences may not be extended Fifth Amendment protections. Thus, under the considerations set forth by the courts—including in *United States v. Verdugo-Urquidez*,—the consequences of Bazzi's designation continue to support his claim to due process under the Constitution. *See Kadi*, 42 F. Supp. 3d 1, 26.

> **B.     Defendants Violated the Constitution's Post-Deprivation Due Process Requirement by Failing to Provide Adequate Notice to Bazzi**

Defendants claim that the press release announcing Bazzi's designation, the basis for his designation published in the Federal Register, and the redacted administrative record provide Bazzi "a clear path under OFAC's regulations to seek administrative reconsideration of his designation or to assert that the circumstances no longer apply." Defs. Mem. at 5-6, ECF Nos. 15-16 (internal citations omitted); *see also* 31 C.F.R. § 501.807. This is not the case, however. "Constitutionally sufficient notice should give the party an understanding of the allegations against it so that it has the opportunity to make a meaningful response. The party must be able to know the conduct on which the government bases its action, so that it can explain its conduct or otherwise respond to the allegations. It must also have reasonable access to the evidence that the government is using against them." *KindHearts for Charitable Humanitarian. Dev. v. Geithner*, 647 F. Supp. 2d 857, 901 (N.D. Ohio 2009) (referring to *Gete v. I.N.S.*, 121 F.3d 1285, 1297-98 (9th Cir. 1997); *see also Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976).

Defendants describe *Am.-Arab Anti-Discrimination Comm. v. Reno*, 70 F.3d 1045 (9th Cir. 1995), as an inapposite Ninth Circuit case that Bazzi relies upon and question whether it remains good law. Defs. Mem. at 6-7, ECF Nos. 15-16. Bazzi, however, relies on *Am.-Arab Anti-Discrimination Comm.*, to the same extent that courts have, in particular the court in *Al Haramain Islamic Found., Inc. v. U.S. Dep't of Treasury*, 686 F.3d 965 (9th Cir. 2012) and the D.C. Circuit in *Fares v. Smith*, 901 F.3d at 315. Pl.'s Mem. of P. & A. at 15-16, ECF Nos. 13-1, 14.

Defendants continue to maintain that in the designation context, the D.C. Circuit has held that due process only requires disclosure of the unclassified portions of the administrative record. *See Holy Land Foundation v. Ashcroft*, 333 F.3d 156, 164 (D.C. Cir. 2003). The D.C. Circuit, however, has reasoned that an administrative decision critically relying on undisclosed classified material would not necessarily comport with due process, especially where a classified record is essential to upholding the action. *Fares,* 249 F. Supp. 3d at 115, 123 *(*citing *People's Mojahedin Org. of Iran v. U.S. Dep't of State,* 613 F.3d 220, 231 (D.C. Cir. 2010)).  Further, disclosure of only "one of three reasons" for an OFAC investigation and designation has been held to render notice incomplete such that it did not meet the requirements of due process. *Fares*, 901 F.3d at 322; *see also KindHearts for Charitable Humanitarian Dev*., 647 F. Supp. 2d at 903 (holding OFAC's disclosure of a letter informing KindHearts of the agency's decision, the thirty-five unclassified, non-privileged exhibits, and a redacted version of the provisional determination evidentiary memorandum to be inadequate notice because they left KindHearts "largely uninformed about the basis for the government's actions").

Both the D.C. Circuit and other courts have therefore regularly held that designated parties must have opportunity to present evidence to rebut the administrative record or otherwise negate the basis of a designation action. *See Fares*, 901 F.3d at 322 (citing *NCORI*, 251 F.3d at 192, 209).

Defendants argue that "Bazzi claims that the Government's reliance on undisclosed classified information is 'presumptively unconstitutional,' and reserved for 'the most extraordinary circumstances.'" Defs. Mem. at 6, ECF Nos. 15, 16. In offering this argument, Defendants omit the critical component of that citation which explains Defendants' obligation in those circumstances—i.e., reliance on undisclosed classified evidence "is 'presumptively unconstitutional' *subject to the government's overcoming the presumption* in 'the most extraordinary circumstances.'" *Al Haramain Islamic Found., Inc.*, 686 F.3d at 965, 981 (emphasis added) (citing *American-Arab Anti-Discrimination v. Reno*, 70 F.3d 1045, 1070 (9th Cir. 1995).

Defendants must therefore provide specific facts or information to support their refusal to provide the classified or otherwise privileged information that Bazzi seeks. *See In re Anthem, Inc. Data Breach Litig.,* 236 F. Supp. 3d 150, 158 (D.D.C. 2017) ("the Government bears the burden of proving each element of the privilege it asserts") (referring to *In re Sealed Case*, 737 F.2d 94, 99 (D.C. Cir. 1984)); *see also Sulemane v. Mnuchin,* Civil Action No. 16-1822 (TJK), 2019 WL 77428 (D.D.C. Jan. 2, 2019). Bazzi does not seek a "privilege log" itemizing or describing withheld documents, but only to ensure that Defendants have met their obligations. *See* Am. Compl., Prayer for Relief, ¶ C. Although Defendants imply that *Al Haramain* suggest that a statement of reasons may not be required by due process, that court expressly found that *Holy Land* and *National Council* do not definitively hold "that due process does not require a statement of reasons." *Al Haramain Islamic Found., Inc*, 686 F.3d at 988.

Defendants suggest that Bazzi provides no case holding that in order to use classified information there must be no alternative means of disclosure. *See* Defs. Mem. at 7-8, ECF Nos. 15, 16. Bazzi, however, is only seeking disclosures in line with the D.C. Circuit's ruling that reliance on such undisclosed classified evidence is permissible "only in the most extraordinary

circumstances and strongly disfavored." *Fares*, 901 F.3d at 324 (internal citations omitted); *see also Rafeedie v. I.N.S.,* 880 F.2d 506, 516 (D.C. Cir. 1989). Critically, Bazzi in no way suggests that he must be provided the full unredacted administrative record. Defendants have noted that "IEEPA specifically contemplates *ex parte* and *in camera* use of classified information"—Bazzi does not disagree. *See* Defs. Mem. at 6, ECF Nos. 15, 16. Indeed, starting with the relief request in his Amended Complaint, Bazzi has consistently and respectfully requested that the Court evaluate the withheld information through an *ex parte* and *in camera* review, in accordance with 50 U.S.C. § 1702(c). *See* Am. Compl., Prayer for Relief, ¶ A-C.

However, even if the withheld information cannot be disclosed due to national security concerns, the Government may provide alternative means to Bazzi to understand the reasons for his designation—including those that may be classified. This could be done by, for instance, disclosing "sufficiently specific 'unclassified summaries'" that provide the "'who,' 'what,' 'when,' and 'where' of the allegations.'" *See Fares*, 901 F.3d at 319, 324 (quoting *Kiareldeen*, 273 F.3d at 548); *see also Al Haramain Islamic Found., Inc*, 686 F.3d at 982-983 (finding there are other means for the Government to provide information that cannot be disclosed due to national security concerns, including through unclassified summaries and/or review by lawyers with appropriate security clearances). Despite Defendants' repeated claims to the contrary, however, OFAC's administrative record does not provide adequate details of "who, what, when, and where," and thus OFAC must "defend[] its failure to provide such alternative disclosure measures." *Al Haramain Islamic Found., Inc*, 686 F.3d at 983. As *Fares* makes clear, disclosure of only the unclassified portions of the record may be tolerated by courts solely on the condition that OFAC has provided alternative means by which to inform affected parties of the reasons for its action. *Fares*, 901 F.3d at 319, 324.

Defendants, again citing *Joumaa v. Mnuchin*, suggest that Bazzi's notice was not "too conclusory." Def.'s Mem. at 11, ECF Nos. 15, 16. In *Joumaa* however, OFAC had provided the plaintiff a three-page letter denying his petition, two unclassified summaries of privileged and classified information, and an unclassified evidentiary memorandum in which the findings in the Basis for Determination section were only partially redacted—not fully redacted as in Bazzi's. *See Joumaa v. Mnuchin*, No. 17-2780 (TJK), 2019 WL 1559453 *20 (D.D.C. Apr. 10, 2019). According to the court, those disclosures provided adequate specific details about the activities alleged in that matter, and the disclosed unclassified evidence was therefore not "too conclusory." *Id.* In contrast, Defendants here have disclosed only a nearly entirely redacted administrative record, with no unclassified summary at all, and seek now to rely essentially on their press release alone.

In addition, and contrary to Defendants' assertions, discussion of various mechanisms by which Bazzi could seek administrative delisting are separate and not relevant to the question of whether he has received adequate notice to meaningfully participate in that proceeding. *See* Defs. Mem. at 10-11, ECF Nos. 15, 16. The ways in which Bazzi might support that process—through an audit or otherwise showing what he does or does not do—cannot be ascribed until he has notice of the conclusions by OFAC that he must rebut. It remains the case that Bazzi could at this time only provide blanket denials to OFAC in an attempt to prove a negative with respect to his alleged ties and transactions. *See KindHearts for Charitable Humanitarian. Dev.*, 647 F. Supp. 2d at 903 n.25 ("To the extent that OFAC contends, or might contend, that KindHearts knew itself what it was doing, where its funds were going and the unlawfulness of their destination, such response on its part is unavailing. Notice is to come from the government because it alone knows what it believes, and why what it believes justifies its actions.")

Accordingly, the Court should order Defendants to remedy the inadequate notice they thus far have provided Bazzi.

## II. DEFENDANTS FAILED TO PROVIDE BAZZI WITH ADEQUATE NOTICE AS TO THE REASONS FOR HIS DESIGNATION UNDER E.O. 13224 IN VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT

Defendants argue that "the APA does not independently confer constitutional rights to individuals who otherwise lack such protection. Rather, it allows those with constitutional rights to argue that an action is unlawful by alleging that those rights were violated by an agency's action." Defs. Mem. at 13, ECF Nos. 15, 16. This is not true, as these limitations do not apply to APA claims. The APA was intended to curtail abuse of power by executive agency officials, and it contains a strong presumption of judicial review for "[a] person suffering legal wrong because of agency action" or "adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702.

The term "person" is not limited to U.S. persons, and foreign persons aggrieved by U.S. agency actions have been permitted to challenge those actions. *See Constructores Civiles de Centroamerica, S.A. v. Hannah*, 459 F.2d 1183, 1190-91 (D.C. Cir. 1972) (noting that APA review is afforded to "any person," not "any citizen," and permitting a nonresident Honduran corporation to maintain action against the Agency for International Development). Defendants themselves separately cite *FBME Bank Ltd*, 209 F. Supp. 3d at 308-10, where a Tanzanian-chartered commercial bank operating mainly in Cyprus challenged under the APA a "special measure" imposed against it by the United States Department of the Treasury's Financial Crimes Enforcement Network ("FinCEN").

A foreign national abroad can therefore bring an APA claim so long as they were "adversely affected or aggrieved by agency action within the meaning of a relevant statute." *See* 5

U.S.C. § 702. Further, foreign persons who experience such harm maintain Article III standing before U.S. courts, and the Supreme Court has held that foreign nationals, "by the policy and practice of the courts of this country, are ordinarily permitted to resort to the courts for the redress of wrongs and the protection of their rights." *See Disconto Gesellschaft v. Umbreit*, 208 U.S. 570, 578 (1908); s*ee also, Cardenas v. Smith*, 733 F.2d 909, 913 (D.C. Cir. 1984) ("For purposes of Article III standing, Cardenas' status as a nonresident alien does not obviate the existence of her injury; it is the injury and not the party that determines Article III standing."); *Silva v. Bell*, 605 F.2d 978, 984-85 (7th Cir. 1979) (holding that analysis of injury for standing purposes is not affected by nonresident status in the country and granting standing for foreign plaintiffs outside the United States).

In the absence of procedural or substantive criteria to guide OFAC's designation process, the APA mandates that the requirements of due process apply to Bazzi, regardless of whether he is separately entitled to them under the Fifth Amendment's Due Process Clause. *See Al Haramain Islamic Foundation, Inc.*, 585 F. Supp. 2d at 1254 ("In the absence of regulations, the requirements of due process apply.") Defendants contend that Bazzi fails to cite a single case where the APA conferred constitutional rights to a litigant who otherwise lacks those rights. Defs. Mem. at 13, ECF Nos. 15, 16. Defendant in this case and in other similar lawsuits, however, have conceded that the APA requires that they provide certain notice to foreign designated parties. Defs. Mem. at 1, ECF Nos. 15, 16 (Bazzi "cites no authority showing that the APA requires anything *beyond* the unclassified or otherwise not protected portions of the administrative record") (emphasis added); *see also* Def.'s Mem. in Support of Mot. to Dismiss or, In the Alternative, for Summ. J. at 35, *Hejeij v. Gacki, et al.*, No. 19-1921 (TFH) (D.D.C. Nov. 8, 2019),ECF No. 8, ("the APA requires

13

OFAC to provide [a designated party] with the administrative record related to its decision once a lawsuit is initiated.") The APA clearly then confers certain rights to Bazzi.

Nevertheless, Defendants continue to repeat the argument that Bazzi is unable to show an entitlement to anything beyond the redacted administrative record. Defs. Mem. at 14, ECF Nos. 15, 16. This proposition however does not account for *Fares*, in which the D.C. Circuit noted that courts have authorized "strictly necessary adaptations of ordinary administrative and judicial process" when only the unclassified portions of the record are disclosed in order to ensure sufficient notice by alternate means. *Fares*, 901 F.3d at 324. Were it true that the D.C. Circuit deemed sufficient disclosure of only the unclassified portions of the administrative record and nothing more, then the detailed discussion of OFAC's due process obligations in *Fares* would be entirely unnecessary.

For all the reasons discussed above however, the unclassified portion of the record that has been disclosed here is insufficient to satisfy the APA's requirements. Accordingly, the Court should order Defendants to remedy the inadequate notice they thus far have provided to Bazzi in violation of the APA. 5 U.S.C. §§ 706(2)(A) and 706(2)(D).

### III.   BAZZI IS DUE SUFFICIENT NOTICE TO ENABLE HIM TO CHALLENGE THE SUBSTANCE OF OFAC'S DECISION TO DESIGNATE HIM THROUGH ITS ADMINISTRATIVE RECONSIDERATION PROCESS

Defendants claim that "Bazzi did not even acknowledge, let alone specifically dispute, a number of instances that OFAC identified where he illicitly collaborated with his father." Defs. Mem. at 15, ECF Nos. 15, 16. Defendants offer no legal support for this assertion. Further, Bazzi's Amended Complaint clearly states that there is "*no evidence* in the disclosed Evidentiary Memorandum supporting OFAC's determination to designate Bazzi under Section 1(c) of E.O. 13224. In other words, there is no statement of reasons relied upon by Defendants demonstrating

that Bazzi 'acts for or on behalf of Mohammad Ibrahim Bazzi, a person whose property and interests in property are blocked pursuant to E.O. 13224.'" *See* Am. Compl., ¶ 5 (emphasis added).

As detailed throughout this Memorandum, Bazzi is not challenging the substance of OFAC's decision to designate him in this litigation, but rather the insufficient notice he has received from Defendants of that designation in violation of the Constitution and the APA. However, in order to challenge his designation through OFAC's administrative delisting process, and demonstrate that he is not acting for or on behalf of Mohammad Ibrahim Bazzi, Bazzi first needs adequate notice of OFAC's reasons for determining that he meets the criteria for designation under E.O. 13224.

The inadequacy of the notice Bazzi has thus far received is confirmed by Defendants' reliance on undisclosed classified material, and that reliance does not comport here with due process where the classified record is essential to upholding the action. *See Fares,* 249 F. Supp. 3d at 123 *(*citing *People's Mojahedin Org.,* 613 F.3d at 231); *see also Zevallos v. Obama*, 793 F.3d 106, 118 (D.C. Cir. 2015).

The Court should therefore enter judgment in favor of all of Bazzi's claims and deny Defendants' Motion for Summary Judgment.

## CONCLUSION

For the foregoing reasons, the Court should enter judgment in favor of Bazzi on all his claims and deny Defendants' Motion for Summary Judgment.

Dated: January 14, 2020                                         Respectfully submitted,


                                                                                    /s/ Erich C. Ferrari

Erich C. Ferrari, Esq.
FERRARI & ASSOCIATES, P.C.
1455 Pennsylvania Avenue, NW
Suite 400
Washington, D.C. 20004
Telephone: (202) 280-6370
Fax: (877) 448-4885
Email: ferrari@falawpc.com
D.C. Bar No. 978253

Attorney for Plaintiff
*Wael Muhammad Bazzi*