UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **WAEL MUHAMMAD BAZZI**, <br><br> Plaintiff, <br><br> v. <br><br> **ANDREA M. GACKI**, <br> *in her official capacity as Director of the U.S. Department of the Treasury, Office of Foreign Assets Control, et al.*, <br><br> Defendants. | Case No. 1:19-cv-01940 (TNM) |

## MEMORANDUM OPINION

The U.S. Department of Treasury suspects that Wael Bazzi is conducting business on behalf of his father, Mohammad Bazzi—a Specially Designated Global Terrorist ("SDGT") and a key financier of the terrorist organization, Hizballah. As a result, the Treasury Department's Office of Foreign Assets Control ("OFAC") has also designated Wael Bazzi as a SDGT. It issued a press release outlining its reasons for this designation and published a notice in the Federal Register.

Wael Bazzi sued, arguing that OFAC violated his rights under the Fifth Amendment Due Process Clause and the APA by providing insufficient notice of the evidence and reasons supporting OFAC's designation. But the Court finds that Bazzi—a Belgian citizen with no connections to the United States—lacks due process rights under the Fifth Amendment and the APA. Thus, the Court will grant OFAC summary judgment on all counts.

## I.

### A.

In the aftermath of the September 11 terrorist attacks, President George W. Bush exercised his authority under the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701 *et seq.*, by issuing Executive Order 13224. *See* Exec. Order No. 13224, 66 Fed. Reg. 49079 (Sept. 23, 2001) ("E.O. 13224"). IEEPA authorizes the President to "deal with any unusual and extraordinary threat, which has its source in whole or substantial part outside the United States, to the national security, foreign policy, or economy of the United States, if the President declares a national emergency with respect to such threat." 50 U.S.C. § 1701(a). If the President declares this national emergency, IEEPA permits him to:

> "investigate, block during the pendency of an investigation . . . prevent or prohibit, any acquisition, holding, withholding, use, transfer, withdrawal, transportation, importation or exportation of, or dealing in, or exercising any right, power, or privilege with respect to, or transactions involving, any property in which any foreign country or a national thereof has any interest by any person, or with respect to any property, subject to the jurisdiction of the United States . . . ."

*Id*. § 1702(a)(1)(B). This is a capacious and formidable authority.

President Bush's executive order declared a national emergency, finding that "grave acts of terrorism and threats of terrorism committed by foreign terrorists" and "the continuing and immediate threat of further attacks . . . constitute an unusual and extraordinary threat to the national security, foreign policy, and economy of the United States." E.O. 13224. Invoking IEEPA, the President delegated authority to the Treasury Secretary to block "all property and interests in property" of persons who, as relevant here, the Treasury Secretary determines (i) "assist in, sponsor, or provide financial, material, or technological support for, or financial or other services to or in support of, such acts of terrorism or those persons listed in the Annex [of

E.O. 13224] or determined to be subject to this order," or (ii) those who "act for or on behalf of" those designated persons. *Id.* § 1(d)(i), (c).

The executive order also authorized the Treasury Secretary, in consultation with the Attorney General and the Secretary of State, to promulgate rules and regulations to "carry out the purposes of this order." *Id*. § 7. Based on that authorization, the Treasury Secretary issued the "Global Terrorism Sanctions Regulations," which outline procedures for designating and blocking the property of "Specially Designated Global Terrorists." *See generally* 31 C.F.R. pt. 594.

Under these procedures, once the Treasury Department determines that persons or entities fall within E.O. 13224, it designates them as "Specially Designated Global Terrorists." 31 C.F.R. § 594.201 n.2 to ¶ (a). Following their designation, it adds their names to a "Specially Designated Nationals" List ("SDN List"), published in the Federal Register. *Id*.

This is not the end of the matter though. A designated person may pursue "administrative reconsideration" or seek rescission of the designation by "assert[ing] that the circumstances resulting in the designation no longer apply[.]" 31 C.F.R. § 501.807. The reconsideration or rescission process allows the designated person to "submit arguments or evidence that the person believes establishes that insufficient basis exists for the designation" or "propose remedial steps . . . which the person believes would negate the basis for designation." *Id*. § 501.807(a). OFAC then reviews this information and provides a "written decision to the blocked person or person seeking the unblocking of a vessel." *Id*. § 501.807(b), (d).

## B.

Invoking E.O. 13224, the Secretary of State—in consultation with the Treasury Secretary and the Attorney General—has designated Hizballah as a foreign organization which has

"committed, or [] pose[s] a significant risk of committing, acts of terrorism that threaten the security of U.S. nationals or the national security, foreign policy, or economy of the United States." *See* J.A. at 52–53, ECF No. 18.[1]  Indeed, over the past forty years, "Hizballah has been involved in numerous anti-US terrorist attacks, including the suicide truck bombings of the US Embassy in Beirut in April 1983, the US Marine barracks in Beirut in October 1983, and the US Embassy annex in Beirut in September 1984, as well as the hijacking of TWA 847 in 1985 and the Khobar Towers attack in Saudi Arabia in 1996."  *See* Defs.' Mot. at 10 (quoting National Counterterrorism Center, *Counter Terrorism Guide*, https://www.dni.gov/nctc/groups/hizballah.html (last visited June 22, 2020)).

OFAC believes that Mohammad Ibrahim Bazzi is a "key Hizballah financier."  J.A. at 44.  In 2018, it designated him and five of his companies —including a "Belgian energy services conglomerate," Global Trading Group NV ("GTG")—as Specially Designated Global Terrorists, based on evidence that for "many years" he had provided Hizballah with "millions of dollars . . . generated from his business activities."  *Id*. at 43–44.  Because of that designation, OFAC blocked all Mohammad Bazzi's property and interests in the United States.  *Id*. at 43.  U.S. persons and entities were also prohibited from dealing with or transacting with him and his businesses.  *Id*.  These actions and determinations by OFAC are not questioned in this case.

Now, OFAC believes that Mohammad Bazzi is evading U.S. sanctions by having his son, Wael Bazzi, conduct business on his behalf.  *Id*. at 11.  About one year after designating his father, OFAC announced that it was also designating Wael Bazzi and three of his companies as SDGTs because he was "acting for or on behalf of his father[.]"  *Id*. at 8.  The press release

---

[1]  All page citations are to the page numbers generated by the Court's CM/ECF system.

specifically identified four justifications for this designation, though it did not explain the source of these allegations or the underlying evidence.  *Id*. at 11.

A few weeks later, OFAC published a notice in the Federal Register announcing Bazzi's designation as an SDGT.  *Id*. at 21.  The notice explained that Bazzi was "[d]esignated pursuant to section 1(c) of E.O. 13224 for acting for or on behalf [of Mohammad Bazzi], an individual whose property and interests in property are blocked pursuant to E.O. 13224."  *Id*.

Bazzi sued OFAC and its Director, Andrea Gacki (collectively, "OFAC"), challenging the adequacy of the evidence supporting his designation.  Compl. ¶¶ 30–35, ECF No. 1.  After filing an answer, OFAC filed the administrative record for Bazzi's designation, including the "evidentiary memorandum" explaining the reasons for designating him as an SDGT.  *See* Certification of A.R., ECF No. 10-1.  But OFAC withheld classified and privileged information from the administrative record.  *Id*. ¶ 4.  Under the heading "Basis for Determination," OFAC redacted the entirety of the nine paragraphs explaining its reasons for designating Bazzi.  *See* J.A. at 25–28.

Upon receiving the administrative record, Bazzi amended his Complaint.  *See* Am. Compl., ECF No. 11.  Importantly, he is no longer challenging that OFAC erred by designating him as an SDGT.  *See* Pl.'s Cross-Mot. for Summ. J. at 29, ECF No. 13 ("Pl.'s Mot.").  Instead, he now contends that OFAC violated his due process rights and the APA by failing to provide adequate notice of the basis for his designation.  *Id*. ¶¶ 24–34.

OFAC moved to dismiss and for summary judgment.  Defs.' Mot. to Dismiss, or, in the Alternative for Summ. J., ECF No. 12-1 ("Defs.' Mot.").  In response, Bazzi filed a cross-motion for summary judgment.  *See* Pl.'s Mot.  These motions are now ripe for the Court's review.

II.

OFAC moves to dismiss Bazzi's Amended Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *See* Defs.' Mot. to Dismiss 1, ECF No. 12. To survive a 12(b)(1) motion, a plaintiff must establish the predicates to jurisdiction, including standing, by a preponderance of the evidence. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). When ruling on this motion, a court must "assume the truth of all material factual allegations in the complaint and construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (cleaned up). When "considering whether a plaintiff has Article III standing, a federal court must assume *arguendo* the merits of his or her legal claim." *Parker v. District of Columbia*, 478 F.3d 370, 377 (D.C. Cir. 2007). If a court determines that it lacks jurisdiction for any claim, it must dismiss that claim. Fed. R. Civ. P. 12(b)(1), 12(h)(3).

Even if a court has jurisdiction, to survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual allegations that, if true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A court may treat a 12(b)(6) motion as a motion for summary judgment if all parties are "given a reasonable opportunity to present all the material that is pertinent to the motion." *See* Fed. R. Civ. P. 12(d).

Even cases that survive Rule 12(b) are subject to summary judgment. Normally, a court will grant summary judgment when there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). But one of Bazzi's claims arises under the APA, and Rule 56's standards do not apply to a court's review of a final agency action under the APA. *See Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 89 (D.D.C. 2006). In these cases, summary

judgment "serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Id*. at 90 (citing *Richard v. INS*, 554 F.2d 1173, 1177 & n. 28 (D.C. Cir. 1977)). Under the APA, the Court will invalidate the agency's action only if "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . [or] without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (D).

### III.

Bazzi insists that OFAC gave him insufficient notice of the basis for his SDGT designation, violating both the Fifth Amendment Due Process Clause and the APA. Am. Compl. ¶¶ 24–34. The allegations in the press release and the Federal Register notice were, he believes, "conclusory." Pl.'s Mot. at 9. And, while he is not requesting disclosure of classified information, he believes that both the Constitution and administrative law entitle him to "evidence or reasoning to establish how OFAC determined that he has acted . . . 'for or on behalf of' his father[.]" *Id*. at 8.

But Bazzi was never entitled to notice in the first place, according to OFAC. *See* Defs.' Mot. at 15, 22. That is, OFAC argues that Bazzi has no due process rights since he has alleged no connection to the United States. *Id*. at 15. And, it insists, the APA provides him no additional entitlement to notice. *Id*. at 22. The Court takes each argument in turn.

### A.

Before addressing whether OFAC *violated* Bazzi's due process rights, consider whether Bazzi even *possesses* these rights?

Though OFAC frames this as a standing issue, *see* Defs.' Mot. at 17 n.6, the D.C. Circuit has not treated the question of whether a person has a constitutional right as jurisdictional. A

7

court cannot proceed in a case without jurisdiction and "it may not assume jurisdiction for the purpose of deciding the merits of the case." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007).  Yet the D.C. Circuit has in other cases assumed that individuals and entities are entitled to constitutional protections when the court may more easily determine whether they were afforded all the protection the Constitution provides.

For instance, in *Jifry v. FAA*, the court determined that it "need not decide" whether the plaintiffs were entitled to due process protection, because they had "received all the process that they are due under our precedent."[2]  370 F.3d 1174, 1183 (D.C. Cir. 2004); *see also Joumaa v. Mnuchin*, 798 F. App'x 667, 669 (D.C. Cir. 2020) ("[W]hile it is not at all clear that Joumaa—a non-U.S. citizen with no established connections to the United States—is entitled to Fifth Amendment protection, he has received all the process he would have been due if he were.").

The scope of Bazzi's constitutional protection "concerns the merits rather than the justiciability of [his] claims." *Trump v. Hawaii*, 138 S. Ct. 2392, 2416 (2018).  OFAC insists that Bazzi lacks standing.  But when evaluating standing, a court must "assume *arguendo* the merits of his or her legal claim." *Schnitzler v. United States*, 761 F.3d 33, 40 (D.C. Cir. 2014).  So when evaluating standing here, the Court must assume that Bazzi has the due process right he claims to have.  *See Doe v. Pompeo*, --- F.3d ---, ---, No. 20-cv-00065 (TNM), 2020 WL 1556251, at *8 (D.D.C. Apr. 1, 2020).  OFAC is mistaken about what type of question this is, even if it is correct about the answer to the question.  To that question we now turn.

Bazzi has not alleged or established any facts showing that he is entitled to any process under the Fifth Amendment.  The guarantees of the Constitution are not automatically applied to

---

[2] The Court agrees with other judges in this District, though, that read *Jifry* to *permit*—not mandate—the Court to assume that the plaintiff has a due process right. *See Fulmen Co. v. OFAC*, No. 18-cv-2949 (RJL), 2020 WL 1536341, at *5 (D.D.C. Mar. 31, 2020).

foreign nationals. Indeed, "[a]liens receive constitutional protections [only] when they have come within the territory of the United States and developed substantial connections with this country." *People's Mojahedin Org. of Iran v. U.S. Dep't of State*, 182 F.3d 17, 22 (D.C. Cir. 1999) (second alteration in original) (quoting *United States v. Verdugo-Urquidez,* 494 U.S. 259, 271 (1990)).

The D.C. Circuit has no test to determine what degree of connection to the United States counts as "substantial." *See Rakhimov v. Gacki*, No. 19-cv-2554 (JEB), 2020 WL 1911561, at *5 (D.D.C. Apr. 20, 2020). But one line is clear: a "foreign entity *without* property *or* presence in this country has no constitutional rights, under the due process clause or otherwise." *People's Mojahedin*, 182 F.3d at 22 (emphasis added).

Drawing on this guidance, judges in this District have dismissed the Fifth Amendment claims of other SDGTs challenging their designations when they fail to allege any connection to the United States. For instance, in *Rakhimov*, Judge Boasberg recently declined to consider an SDGT's due process challenge because the plaintiff pleaded only that his property or interests were "blocked" because of his designation but failed to plead that he had any presence or property within the United States. 2020 WL 1911561, at *5. Similarly, in *Fulmen Co. v. OFAC*, Judge Leon found that the plaintiff had no due process rights because he admitted he had "no connections to any U.S. person or U.S. entity." No. 18-cv-2949 (RJL), 2020 WL 1536341, at *5 (D.D.C. Mar. 31, 2020).

So too here. Bazzi is a citizen of Belgium and currently resides there. Am. Compl. ¶ 10. His Complaint alleges no facts suggesting that he has any connection—much less a substantial one—to the United States. He does not allege that he has ever come within U.S. territory. Nor does he claim that he has *any* property within the United States.

At most, Bazzi's brief argues—but cites no supporting case law—that "the universal consequences of [his] designation support a due process claim." *See* Pl.'s Mot. at 18. That is, he suggests that he should be entitled to due process because he is suffering significant hardship because of OFAC's designation.

But not everyone everywhere has rights under our Constitution. And foreign nationals do not suddenly acquire constitutional rights whenever the United States sanctions them. Indeed, courts have routinely found that foreign entities sanctioned by the United States that lack any presence in the country have no due process rights.

In *People's Mojahedin*, for example, the Secretary of State designated two groups as "foreign terrorist organizations." 182 F.3d at 18. As with Bazzi's designation, this foreign terrorist designation had three consequences: it (1) allowed the Treasury Secretary to "require U.S. financial institutions that possess or control assets of that organization to block all financial transactions involving those assets"; (2) criminalized the "knowing provision of material support or resources" to those organizations; and (3) blocked "[a]lien members or representatives" of the organizations from admission to the United States. *Id.* at 21.

Yet, despite these adverse consequences, the D.C. Circuit determined that the groups had no due process rights. *Id.* at 22. Why? Because the groups had "no presence in the United States." *Id.*; *see also, e.g.*, *Rakhimov*, 2020 WL 1911561, at *5 ("Describing the legal consequences of any person's addition to the SDN list, however, does not establish Plaintiff's substantial connections to the United States."). If the legal consequences were, alone, enough to establish a substantial connection to the United States, "anyone challenging an OFAC designation would enjoy constitutional protections, regardless of the extent of [his or] her ties to this country." *Rakhimov*, 2020 WL 1911561, at *5. This is most assuredly not the law.

10

Nor is the Court convinced by Bazzi's invitation for the Court to "infer" that he has property in the United States based on OFAC's press release. *See* Pl.'s Reply at 9, ECF No. 17. Bazzi notes that the press release announcing his designation states that "[a]s a result of [OFAC's] action, all property and interests in property of these persons . . . that are in the United States or in the possession or control of U.S. persons are blocked and must be reported to OFAC." *Id*. (quoting J.A. at 9). Bazzi insists that this stray reference provides "plausible grounds" to "infer" that Bazzi "has property subject to blocking." *See id*. at 10.

Not so. First, this excerpt from the press release appears to be standard for press releases announcing designations under E.O. 13224. *See, e.g.*, J.A. at 43 (using substantially similar language in Mohammad Bazzi's designation press release). It describes the legal consequences flowing from an SDGT designation. But it never states that Bazzi has property in the United States—only that if Bazzi or any of the other designees referenced in the press release have any property in the United States or in the "possession or control of U.S. persons," it is blocked. *Id*. at 9.

More importantly, Bazzi's Complaint never alleges that he had any property blocked. *Accord Fulmen*, 2020 WL 1536341, at *6 (rejecting plaintiff's argument in briefing that it was "entitled to a constitutional claim for due process" when OFAC "froze its assets" because the complaint did "not allege that plaintiff had assets in the United States that were frozen by OFAC" (cleaned up)).

Since Bazzi has alleged no connection to the United States—outside OFAC's sanction— he is entitled to no protection under the Due Process Clause.

* * *

But even if he were entitled to Fifth Amendment protection, Bazzi has received all the process he was due. This alternative holding independently means Bazzi must lose this claim.

To determine whether OFAC gave Bazzi sufficient notice under the Due Process Clause, the Court must weigh three factors under the *Mathews v. Eldridge* balancing test: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335 (1976).

The D.C. Circuit, applying *Mathews* to similar designation procedures under the Foreign Narcotics Kingpin Designation Act, has noted that "the effect of an OFAC designation on the designee's private interests is 'dire'" and that when "the government freezes assets based on redacted evidence . . . the risk of erroneous deprivation is especially high." *Fares v. Smith*, 901 F.3d 315, 323–24 (D.C. Cir. 2018). Yet it has recognized that the government's interest in protecting classified information is equally high. *See Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 164 (D.C. Cir. 2003) ("We have emphasized the primacy of the Executive in controlling and exercising responsibility over access to classified information, and the Executive's compelling interest in withholding national security information from unauthorized persons in the course of executive business." (cleaned up)).

So the Circuit has routinely rejected the argument that OFAC's notice of a designation violates due process whenever "the agency relies upon classified information that the government refused to disclose."[3] *Fares*, 901 F.3d at 324 (cleaned up). Instead, when the

---

[3] Bazzi does not request access to classified information and agrees that if the information is actually classified, OFAC may satisfy due process through "other procedural safeguards." Pl.'s Mot. at 24 (quoting *Fares*, 901 F.3d at

government must rely on classified evidence for a designation, in "lieu of classified evidence the government may provide designees with sufficiently specific unclassified summaries ensuring that neither the government's sources nor national security were compromised, that provide plaintiffs with the 'who,' 'what,' 'when' and 'where' of the allegations." *Id*. (cleaned up).

That is precisely the notice Bazzi received. To be sure, in some cases, the government has provided an unclassified summary of the allegations with a redacted administrative record. *See, e.g.*, *Jourmaa*, 798 F. App'x at 669. While OFAC produced no official summary to Bazzi here, its press release provided a "sufficiently detailed summar[y]" to "adequately explain OFAC's reasons" for designating Bazzi. *See id*.

Far from being "conclusory, caveated, and speculative," *see* Pl.'s Mot. at 25, the press release communicates the "'who,' 'what,' 'when' and 'where' of the allegations" against Bazzi. *Fares*, 901 F.3d at 324. Who? Wael Bazzi operated on behalf of his father, Mohammad Bazzi. J.A. at 11. What? The press release provided four bases for OFAC's conclusion that Wael was conducting business on his father's behalf, noting that he:

1. formed a petroleum company—Voltra Transcor Energy BVBA—"to maintain his father's access to the oil industry," *id*.;

2. coordinated with his father and another GTG employee to change GTG's name to Engineers Procurement and Construction after GTG's designation and "was the purported owner of this new company, likely to obscure Mohammad Bazzi's involvement and circumvent Mohammad Bazzi's designation," *id*.;

---

324). He asks the Court, though, to conduct an *ex parte* and *in camera* review of the information to determine whether "the withheld information cannot be disclosed[.]" *Id*. The Court has done so and is satisfied that the information cannot be disclosed because of national security concerns. Nothing in the classified administrative record alters the Court's due process analysis.

13

3. helped his father and "a Lebanon-based associate facilitate payments for a business contract," *id*.; and,

4. established an account for one of his companies, Voltra Transcor Energy, which "Mohammad Bazzi attempted to use as an intermediary company to move money to GTG and circumvent OFAC sanctions," *id*. at 11–12.

Where? The press release alleges that Bazzi was helping his father do business in the Gambia. *Id*. at 11. And when? OFAC notes that Wael was "witting of Mohammad Bazzi's involvement in illicit activity" as of "at least early 2018," that the listed conduct occurred "[s]ince [his father's] designation in May 2018," and that GTG's name change occurred in August 2018. *Id*.

The details in the press release do not leave Bazzi "stumbling toward a moving target." *Fares*, 322 F.3d at 322 (cleaned up); *see also Al Haramain Islamic Found., Inc. v. U.S. Dep't of Treasury*, 686 F.3d 965, 986 (9th Cir. 2012) (noting that OFAC's press release gives "some clarity" on the allegations against plaintiff, but finding that it did not satisfy due process because it informed plaintiffs of only one of three reasons for its designation); *Rakhimov*, 2020 WL 1911561, at *5 (noting that the OFAC "is entitled to rely on . . . its own press release in making and justifying its designation decisions" (cleaned up)). Here, he has access to the precise details about the reasons for OFAC's designation.

And he has enough notice of these bases to submit evidence that these allegations are untrue if he seeks reconsideration. As OFAC notes, Bazzi can provide more than "general" or "blanket denials." Defs.' Reply at 15, ECF No. 15. He can "try to show—through an audit or otherwise—that he did not establish an account for Voltra Transcor Energy in connection with his father's attempt to move money and circumvent sanctions"; or that "he did not form a

petroleum company to maintain his father's access to the oil industry"; or that "any Gambian government contracts with which he was involved had no connection to his father." *Id*. at 15–16.

Though Bazzi may be frustrated by not being able to discredit the specific evidence against him, that does not mean that he is without means to submit his own evidence countering these allegations. *See Rakhimov*, 2020 WL 1911561, at *7. So even if Bazzi had a right to notice under the Due Process Clause, the Court finds that he received sufficient notice here.

**B.**

Separately, Bazzi suggests that the APA entitles him to all the process he would be due if he could assert a Fifth Amendment right. Pl.'s Mot. at 27.

His logic unfolds this way. First, he notes—correctly—that foreign nationals can bring APA claims when they have suffered a "legal wrong" or are "aggrieved by an agency action within the meaning of the relevant statute." *Id*. at 26–27 (quoting 5 U.S.C. § 702). Second, he cites cases from this Circuit that have "routinely held that the traditional concepts of due process are incorporated into administrative law." *Id*. at 27 (citing *Hill v. U.S. Parole Comm'n*, No. 16-cv-1476 (JEB), 2017 WL 2414446 (D.D.C. June 2, 2017); *Howmet Corp. v. EPA*, 614 F.3d 544, 553 (D.C. Cir. 2010)). So, he reasons, as a foreign national asserting an APA challenge, the APA must entitle him to the "protections of due process . . . regardless of whether he is separately entitled to them under the Fifth Amendment." *Id*. at 29.

But, as OFAC notes, there is a flaw in Bazzi's logic. Defs.' Reply at 18. None of the cases Bazzi cites says that the APA independently gives due process-like protections to those who have no Fifth Amendment rights.[4] Though courts have "occasionally . . . held that an

---

[4] In fact, in all the cases cited by Bazzi, the plaintiffs appear to be U.S. citizens or domestic entities that are entitled to constitutional rights. *See Al Haramain*, 585 F. Supp. 2d at 1243, 1253–54 (domestic entity); *Howmet*, 656 F. Supp. 2d at 169 (same); *Hill*, 2017 WL 2414446, at *1 (prisoner seeking parole).

15

agency's prejudicial procedural failure violates the APA . . . the genesis of that rule appears to be the Due Process Clause, rather than a separate statutory grant of procedural rights." *Al Haramain*, 686 F.3d at 976.

Take *Hill*. As Bazzi recognizes, in that case the court observed that "both due process and administrative law require that a person receive fair notice before certain hearings are held." 2017 WL 2414446, at *7 (citing *GE Co. v. EPA*, 53 F.3d 1324, 1328–29 (D.C. Cir. 1995)). But what did the court mean by "both due process and administrative law"? Does that mean that administrative law independently requires full due process procedures, apart from the Constitution?

The answer is in the case cited by *Hill*: *GE Co. v. EPA*. There, the EPA imposed a fine on GE after it concluded that GE had processed pollutants "in a manner not authorized under EPA's interpretation of its regulations." *GE Co.*, 53 F.3d at 1325. GE sued under the APA, arguing that the EPA violated due process because it "was never on notice of the agency interpretation it was fined for violating." *Id*. at 1328. The court agreed with GE.

Due process, the court observed, "requires that parties receive fair notice before being deprived of property." *Id*. This "no punishment without notice rule is most commonly applied" in criminal cases. *Id*. (cleaned up). But, the court noted, the "'fair notice' requirement" has long been recognized in the "civil administrative context" as well. *Id*. at 1329. So the requirement that agencies give "fair notice" of its rules before imposing criminal *or civil* punishment is "thoroughly 'incorporated into administrative law.'" *Id*. (quoting *Satellite Broad. Co. v. FCC*, 824 F.2d 1, 3 (D.C. Cir. 1987)); *see also Howmet*, 614 F.3d at 553 ("Traditional concepts of due process incorporated into administrative law preclude an agency from penalizing a private party

16

for violating a rule without first providing adequate notice of the substance of the rule." (internal quotation omitted)).

In other words, in *GE Co.*, the D.C. Circuit did not find that the APA independently afforded GE due process rights. It merely noted that the protections of the Due Process Clause extend not only in cases involving criminal liability, but also to civil administrative cases. *GE Co.*. 53 F.3d at 1329. *Hill* echoed that—not saying that administrative law provided a separate mandate to apply due process procedures, only that the Due Process Clause *applies* to administrative hearings. Indeed, in *Hill*, the court determined that the plaintiff was not entitled to due process protections, even though he sued under the APA. 2017 WL 2414446, at *7 (determining that a federal prisoner was not entitled to notice of a parole hearing because "rescinding a parole grant prior to release violates no protected liberty interest" (cleaned up)).

Here, there is no question that Bazzi, as a foreign national, can bring an APA claim. Nor does the Court disagree that administrative law incorporates the Due Process Clause—that is, that due process protections *apply* to administrative civil claims. But the APA permits only "alien citizens . . . to resort to the courts for the redress of wrongs and the protection of *their rights*." *Constructores Civiles de Centroamerica, S. A. (CONCICA) v. Hannah*, 459 F.2d 1183, 1190 (D.C. Cir. 1972) (quoting *Disconto Gesellschaft v. Umbreit*, 208 U.S. 570, 578 (1908)) (emphasis added). The Court must, then, consider whether Bazzi has due process rights to enforce through the APA.

For the reasons explained above, Bazzi's lack of any connection to the United States means that he has no due process rights. And, where he lacks the right to due process, the APA does not provide him separate constitutional-equivalent protection. *Compare Latif v. Holder*, 28 F. Supp. 3d 1134, 1163 (D. Or. 2014) (finding that where plaintiff established a violation of

17

procedural due process, the agency also violated the APA), *with Perry v. Delaney*, 74 F. Supp. 2d 824, 837 (C.D. Ill. 1999) (determining that when the plaintiffs could not establish a due process right, they had no claim that the defendants violated the APA).

Bazzi may have a viable claim under the APA to enforce a statute or regulation that requires notice. *See, e.g.*, *Constructores Civiles*, 459 F.2d at 1189–92 (allowing a foreign entity to sue under the APA to determine "applicability of statutes and regulations to a contract let under the Foreign Assistance Act"); *People's Mojahedin*, 182 F.3d at 22 (noting that since the foreign entities had no due process rights, "[w]hatever rights [they] enjoy in regard to these cases are therefore statutory rights only"). But, unlike other SDGTs who have challenged their designations under the APA, Bazzi does not try to identify any statutory or regulatory obligation that OFAC has to provide him with evidence or reasons supporting his designation. *See Rakhimov*, 2020 WL 1911561, at *7 (addressing argument OFAC provided insufficient notice under 31 C.F.R. § 501.807 and 5 U.S.C. § 555(e)).[5]

Bazzi has identified no legal right—constitutional or otherwise—that OFAC violated. Since Bazzi has not shown that OFAC's actions were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . [or] without observance of procedure required by law," 5 U.S.C. § 706(2)(A), (D), the Court will grant summary judgment for OFAC on Bazzi's APA claim.

---

[5] In passing, Bazzi vaguely suggests that 31 C.F.R. § 501.807—which allows SDGTs to challenge their designations—indirectly entitles him to notice of the factual basis for his designation since "[t]hese procedures presume that designated persons have an understanding of the reasons for their designation." Pl.'s Mot. at 28. But even if this interpretation of the regulation is correct, as explained above, OFAC gave Bazzi adequate notice of the basis for his designation through the press release. *See supra* III.A.; *see also Rakhimov*, 2020 WL 1911561, at *7 (rejecting the plaintiff's argument that 31 C.F.R. § 501.807 entitled him to additional notice).

## IV.

Bazzi, as a foreign national with no alleged connection to the United States, is not entitled to fair notice of the basis for his SDGT designation under either the Constitution or the APA. But even if he were, he has received all the notice he would be due. For these reasons, the Court will deny OFAC's Motion to Dismiss under 12(b)(1), but it will grant OFAC's Motion for Summary Judgment. It will deny Bazzi's Cross-Motion for Summary Judgment. A separate order will issue.

Dated: June 24, 2020                                       TREVOR N. McFADDEN, U.S.D.J.